# THE MORTNER LAW OFFICE, P.C.

40 Broad Street
5th Floor
New York, NY 10004

Richard M. Mortner, Esq.                                   Tel.: 212-480-2181
Email:  rmm@mortnerlaw.com                                 Fax: 646-304-3169

March 17, 2008

Hon. Lewis A. Kaplan, USDJ
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 1310
New York, NY 10007

      **Re:**     **Tanz v. Kasakove et al, CASE #: 1:08-cv-01462-LAK**

Dear Judge Kaplan:

I represent the Plaintiff in the above-referenced action.  I herein move to vacate the Court's
Order of Dismissal of March 5, 2008, which the Court affirmed in the Endorsement of this date
affixed to my letter of March 6, 2008.   (*See* ECF Docket Entry No. 4.)

It is not without chagrin that I respectfully request the Court to now accept the Second Amended
Complaint, annexed hereto, in this case, *nunc pro tunc*, and to vacate the Order of Dismissal.

Indeed, the Court properly dismissed the prior Complaint and rejected the Amended Complaint,
because the citizenship of the corporate defendant, Markas Financial Services, Inc., was
improperly alleged in those pleadings.  Those pleading only alleged that the corporation's
principal place of business as being located in a state (New Jersey) different from the state of
plaintiff's citizenship (New York).  However, they failed to allege the corporate defendant's state
of incorporation.

Counsel, previously neglected to note that the statute, 28 U.S.C. §1332, by using the conjunctive
"and," gives ***dual***, not alternative, citizenship to a corporation whose principal place of business
is located in a state different from the state of its incorporation. (*See* In re Balfour MacLaine
Intern. Ltd., 85 F.3d 68 (2d Cir. 1996)) Thus, the statute treats a corporation as a citizen of both:
(1) the state of its incorporation; and (2) the state where it has its principal place of business, if
different from its state of incorporation.

In the prior pleadings, by failing to allege that, upon information and belief, the defendant
corporation is incorporated in the State of New Jersey -- as the Second Amended Complaint now
alleges -- the possibility existed on the face of those prior pleadings that the corporate defendant

Hon. Lewis A. Kaplan, USDJ
March 17, 2008
Page 2


may be incorporated in New York, which would give that corporate defendant dual citizenship (New York and New Jersey), and thereby defeat the plaintiff's assertion of diversity jurisdiction.

In fact, public records indicate (see attached) that Markas Financial Services, Inc. is incorporated in New Jersey, which the Second Amended Complaint now alleges.

Accordingly, I respectfully request that the Second Amended Complaint be accepted by the Court and that Order of Dismissal be vacated so that this action may be restored.

Respectfully submitted,

Richard M. Mortner (RM-0019)

Att.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PHYLIS TANZ, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 08-cv-01462-LAK |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| EUGENE KASAKOVE and | : | |
| MARKAS FINANCIAL SERVICES, INC., | : | |
| | : | |
| Defendants. | : | |

**CIVIL ACTION: SECOND AMENDED COMPLAINT**

Plaintiff Phylis Tanz, by her attorney Richard M. Mortner, Esq., for her complaint against defendants respectfully alleges as follows:

**NATURE OF THE ACTION**

1.      Plaintiff, a widow, aged 73 years, alleges breach of fiduciary duty against her former attorney-in-fact, financial advisor and accountant Defendant Eugene Kasakove and his company Markas Financial Services Inc.  Plaintiff alleges that defendant Kasakove's actions, individually and through Markas Financial Services Inc., was malicious, oppressive and fraudulent, and plaintiff seeks lost investment income, disgorgement, punitive damages and attorneys' fees in excess of the statutory jurisdictional amount.  Plaintiff also seeks damages for intentional infliction of emotional distress in excess of the statutory jurisdictional amount.

**VENUE AND JURISDICTION**

2.      Subject matter jurisdiction exists based on 28 U.S.C. §1332, because the

amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because the

controversy is between citizens of different states.

3.      Personal jurisdiction over the defendants also is proper based on New

York Civil Practice Law and Rules § 302, and Rule 4 of the Federal Rules of Civil Procedure,

subparagraphs (e) and (h).

4.      Personal jurisdiction and venue in this action are predicated on 28 U.S.C.

§ 1391(a), since a substantial part of the events or omissions giving rise to the claim occurred in

the Southern District of New York.


**THE PARTIES**

5.      Plaintiff, Phylis Tanz, is a citizen of the State of New York.  She resides at

715 Park Avenue, New York, NY 10021

6.      Upon information and belief, defendant Eugene Kasakove is a citizen of

the State of New Jersey, and resides at 167 Stephens Park Road, Hackettstown, NJ 07840.

7.      Upon information and belief, defendant Markas Financial Services, Inc.

("MFS") is incorporated in the State of New Jersey, with its principal place of business at 167

Stephens Park Road, Hackettstown, NJ 07840.

8.      Upon information and belief, defendant Kasakove is the president of MFS.

9.      Upon information and belief, defendant MFS, at all material times herein,

was acting on its own behalf and as an agent for Defendant Kasakove.  All acts and omissions by

MFS alleged herein are imputable to Defendant Kasakove by virtue of the aforesaid agency

relationship.

## FACTUAL BACKGROUND

10.     Plaintiff, Mrs. Tanz, married Norman Tanz in 1989.  On November 3,

1996, after battling cancer for two years, Mr. Tanz died.

11.     Mrs. Tanz was a dedicated wife, mother and homemaker. Mrs. Tanz's life

as a housewife did not equip her with the financial sophistication she needed following the death

of her husband.  However, she was acutely aware that she needed to use the utmost caution in

handling her limited assets.

12.     During her husband's illness and in the difficult period that followed, Mrs.

Tanz found that she could not keep up with the medical and household bills.

13.     Thus, in the period just prior to Norman Tanz's death, Defendant

Kasakove, who had been Mrs. Tanz's accountant since 1995, began coming to Mrs. Tanz's home

and helping Mrs. Tanz organize her bills.

14.     Following the passing of her husband Mrs. Tanz was under enormous

stress.  In addition to grieving over her loss, she was sick with Bell's palsy, type-2 diabetes, and

high blood pressure.  In addition, her son suffered a heart attack and had to undergo open heart

surgery, Mrs. Tanz's daughter became ill with multiple sclerosis, and lastly, her step-children

were contesting her late-husband's will.

15.     During this difficult period, Defendant Kasakove visited Mrs. Tanz in her

home and offered to take over the management of Mrs. Tanz's financial matters.  He told Mrs.

Tanz he was not only an accountant, but that he also provided expert services as a stockbroker and financial manager through his company, defendant MFS.

16.    As an elderly woman, Mrs. Tanz firmly believed that the best thing to do was to invest her money very safely and live off of the interest.  She had enough for her needs and she wanted the emotional security of knowing that her money was prudently managed.

17.    Mrs. Tanz told Defendant Kasakove she needed to feel safe and secure; she was very conservative and wanted to live off of her income, not her principal.

18.    Defendant Kasakove agreed with this concept.

19.    On December 6, 1996, one month after Norman Tanz died; Mrs. Tanz signed a power of attorney prepared by defendant Kasakove, which accorded defendant Kasakove broad powers over every aspect of Mrs. Tanz's financial life (the "Power of Attorney").

20.    Defendant Kasakove billed Mrs. Tanz for his service by sending invoices in the name of his company, defendant Markas Financial Services, Inc.

21.    After obtaining Mrs. Tanz's Power of Attorney, defendant Kasakove persuaded Mrs. Tanz to move her nest egg of approximately $493,767 from her broker for the prior 17 years to a new broker who was a friend of defendant Kasakove, Donn Kerr.  In this way defendant Kasakove cut Mrs. Tanz off from the last of her advisors and protectors.

22.    Eventually, plaintiff invested another $31, 000, making the total amount of her funds placed under defendants' control $525,767.

23.    Mrs. Tanz owned no property or tangible assets of any significant value. Thus, defendant Kasakove exercised control over virtually all of plaintiff's assets.

4

24.     Mrs. Tanz lodged complete trust in defendant Kasakove.  Defendant Kasakove supervised every aspect of Mrs. Tanz's financial life, including the payment of her bills.  In addition, as Mrs. Tanz's attorney-in-fact, defendant Kasakove assisted Mrs. Tanz in working with her lawyers to resolve her dispute with her late husband's children and to close the estate.

25.     Mrs. Tanz so relied upon defendant Kasakove that before she would spend any money she would ask Defendant Kasakove whether she could afford the proposed expense.

26.     Immediately upon taking control of Mrs. Tanz's financial life, defendant Kasakove began providing Mrs. Tanz falsely inflated reports regarding the performance of her portfolio under defendants' management.  Defendant Kasakove consistently advised Mrs. Tanz that she "had plenty of money."

27.     Time and again, defendant Kasakove assured Mrs. Tanz that she was a wealthy woman, assured her that she could afford the expenses she was considering and encouraged her to change her frugal lifestyle.

28.     Thus, Mrs. Tanz began to spend money on a lifestyle she had never known before.

29.     Defendant Kasakove advised Mrs. Tanz that these expenditures were being paid from her investment income.

30.     Thus, defendant Kasakove approved, and indeed encouraged, Mrs. Tanz to incur expenses on luxury items such as the following:

a.      Extended stays in Florida at the Boca Raton Hotel, Renaissance Hotel, Holiday Inn Hotel;

b.      A cruise on the Radisson through the Panama Canal and to Costa Rica;

c.      Membership at The Friars Club; and

d.      Membership at the Town Club.

31.      Defendant Kasakove misled Mrs. Tanz into falsely believing that, as a result of defendants' management of her portfolio and financial affairs, she had become substantially wealthier than when she had appointed Defendant Kasakove her attorney-in-fact, and that she was living on the investment income defendants had earned for her through management of her assets.

32.      However, the reality of Mrs. Tanz's financial health was quite different than the rosy picture represented by defendant Kasakove.  In fact, during the period 1997 to 2001, as a result of defendant Kasakove's financial management, misleading and false reports and financial recommendations, Plaintiff had unknowingly spent most of her principal.

33.      In 2001, defendant Kasakove took advantage of Mrs. Tanz's trust and confidence by asking Mrs. Tanz to transfer $100,000 to a privately held trucking company controlled by Defendant Kasakove, which she agreed to do.

34.      Following Plaintiff's $100,000 investment in defendant's trucking company in 2001 until 2006, defendant Kasakove repeatedly assured plaintiff that she should not worry about her finances, and that he would continue to provide her with adequate income from her investment in his company.

35.      However, in December 2006, defendant Kasakove advised plaintiff that he would no longer provide her with income from her investment in his trucking company because he claimed to have sold the business.

36.      Thus, in December 2006, plaintiff realized that defendant's assurances and promises of ongoing income for her support were intended to lull her into failing to commence an action against defendant for the mismanagement of her finances.

37.     Moreover, notwithstanding the fact that Mrs. Tanz was an investor in the

trucking company, Defendant Kasakove only returned to Plaintiff her initial investment, but paid

Plaintiff no share of the proceeds of the alleged sale of the trucking company.

38.

**EQUITABLE ESTOPPEL**

39.     As a result of defendant Kasakove's promise to continue to provide

plaintiff with adequate income, defendant Kasakove lulled plaintiff into believing that it was not

necessary for her to seek the advice of counsel or commence litigation pertaining to defendants'

improper representations and mismanagement of her funds.

40.     Defendant Kasakove misrepresented to plaintiff that (i) under his financial

management she would spend only her investment income; (ii) that in the period 1997 to 2001

plaintiff had plenty of money for the expenses she was incurring; and (iii) from 2001 to 2006,

defendant Kasakove fraudulently represented to plaintiff that defendant would provide plaintiff

with ongoing income on which to live.

41.     Based on Mrs. Tanz's lack of financial knowledge and the personal

hardships she was enduring, coupled with the fact that defendant Kasakove had taken upon

himself the role of her fiduciary, Mrs. Tanz justifiably relied on Defendant Kasakove's decisions

and recommendations and believed defendant Kasakove's misrepresentations.  As a result,

plaintiff and was lulled into a false sense of security by Defendant Kasakove.

42.     Plaintiff, in reasonable reliance on defendant Kasakove's assurances,

delayed in bringing this suit until now.

43.    Defendant Kasakove, as plaintiff's fiduciary, wrongly induced plaintiff to invest in his own company, and fraudulently represented to plaintiff that he would provide her with income on which to live, in order to lull plaintiff so that she would refrain from commencing legal action against defendant Kasakove for his breaches of his fiduciary duty.

44.    Thus, defendant's conduct caused the plaintiff to delay the bringing of this lawsuit.

45.    Based on the foregoing, in the event that defendants assert the limitations defense, defendants may be estopped from taking advantage of defendant Kasakove's own wrongful conduct by the application of the doctrine of equitable estoppel.

## COUNT I
### (Breach of Fiduciary Duty)

46.    Plaintiff repeats and realleges each of the allegations asserted in paragraphs 1 through 45 of this complaint as though fully stated herein.

47.    Mrs. Tanz reposed trust and confidence in Defendant Kasakove, and Defendant Kasakove took advantage of Mrs. Tanz's trust and lack of sophistication.

48.    In addition, Defendant Kasakove assumed a position of strength in relation to Mrs. Tanz by holding himself out as an expert in money managing.

49.    Defendant Kasakove imprudently advised Mrs. Tanz that she depart from her frugal lifestyle and incur expenses she had not previously incurred at any time in her life.

50.    Defendant Kasakove failed to advise Mrs. Tanz that the spending he recommended she undertake was actually being paid for out of her principal.

51.     As a result Mrs. Tanz without her knowledge depleted her financial resources, thereby depriving herself of adequate principal to generate the investment income she had planned to live on as an elderly widow.

52.     Thus, defendant Kasakove made fraudulent misstatements of fact to Mrs. Tanz and fraudulently concealed pertinent information, to wit, that the extravagant personal expenses he advised her to incur were being paid for out of her original principal.

53.     Defendant Kasakove, as Mrs. Tanz's attorney-in-fact, owed a duty to her to disclose any information that was relevant to the affairs entrusted to him.  Specifically, Defendant Kasakove owed a duty to Mrs. Tanz to manage her accounts in the conservative manner that she had requested, to properly advise her, to disclose all pertinent information and avoid all self-dealing.

54.     Defendant Kasakove's duty was heightened in the instant case due to the fact that Defendant Kasakove had vastly superior knowledge to Mrs. Tanz.

55.     Defendant Kasakove, as Mrs. Tanz's attorney-in-fact, breached his duty to satisfy the high standard of loyalty to which all fiduciaries are bound, including the duty that all disclosures be complete and unequivocal.

56.     Defendant Kasakove breached his fiduciary duty by failing to disclose the true state of Mrs. Tanz's investment portfolio.

57.     Defendant Kasakove, as Mrs. Tanz's attorney-in-fact, breached his fiduciary duty by failing to advise his client of facts material to her investment decisions, *i.e.*, he failed to advise Mrs. Tanz that the spending that he was recommending she undertake was being paid out of her principal – not her investment income, as she believed.

58.    Defendant Kasakove breached his duty to act with regard to Mrs. Tanz's

financial matters, which had been entrusted to him, with the same degree of prudence and

diligence as prudent individuals of discretion and intelligence employ in their own like affairs.

59.    Defendant Kasakove breached his fiduciary duty of prudence by advising

Mrs. Tanz that she depart from her frugal lifestyle and incur expenses that depleted her principal.

60.    Defendant Kasakove breached his duty, as Mrs. Tanz's attorney-in-fact, to

act in the utmost good faith and undivided loyalty toward his principal, Mrs. Tanz, and to act in

accordance with the highest principles of morality, fidelity, loyalty and fair dealing.

61.    Similarly, defendant Kasakove breached his duty, as Mrs. Tanz's attorney-

in-fact, to utilize the Power of Attorney he had been given for the benefit of his principal, to

achieve what is in Mrs. Tanz's best interest.

62.    Defendant Kasakove breached his duty of loyalty and his duty to act for

the benefit of his principal's best interest by misleading Mrs. Tanz into believing as a result of

Defendant's management of her finances, she had plenty of money and had doubled her

principal, and that any losses that occurred subsequently were due to market forces – not

spending and mismanagement.

63.    Upon information and belief, defendant Kasakove did this so that Mrs.

Tanz would provide $100,000 for defendant Kasakove's trucking company.

64.    In other words, defendant Kasakove misled Mrs. Tanz regarding the state

of her finances under his management in order to cause her to make her funds available for his

personal needs.

65.    Accordingly, as Mrs. Tanz's attorney-in-fact , Defendant Kasakove

breached his fiduciary duties (i) to make all disclosures complete and unequivocal, (ii) to advise

his client of facts material to her investment decisions, (iii) to act with regard to Mrs. Tanz's

financial matters, which had been entrusted to him, with the same degree of prudence and

diligence as prudent individuals of discretion and intelligence employ in their own like affairs,

(iv) to act with the utmost loyalty and (v) to act in his principal's best interest.

66.     Based on the foregoing, defendant Kasakove was responsible for the

depleting of plaintiff's financial resources and thus depriving her of adequate investment income

on which to live out her senior years.

67.     As a result, Plaintiff is entitled to receive damages resulting from her loss

of investment income.

68.     Based on the foregoing, defendant Kasakove has exhibited a very high

degree of moral culpability.  Therefore, defendant Kasakove's breach of his fiduciary duties

gives rise to liability even in the absence of damages, and plaintiff is entitled to receive punitive

damages.

69.     Defendant Kasakove is also required to disgorge any ill-gotten gain arising

from the investment of $100,000 of Mrs. Tanz's funds in defendant Kasakove's trucking

company, even if Plaintiff sustained no direct economic loss.


**COUNT II**
**AGAINST DEFENDANT KASAKOVE**
**(Intentional Infliction of Emotional Distress)**

70.     Plaintiff repeats and realleges each of the allegations asserted in

paragraphs 1 through 69 of this complaint as though fully stated herein.

71.    In 2003, plaintiff began to ask questions to defendant Kasakove regarding his management of her finances and began to ask for assurances that she would not lose the $100,000 she had invested in Defendant Kasakove's for his trucking company.

72.    In response to plaintiff's efforts to regain control of her financial life and to rest that control from defendant Kasakove, defendant Kasakove began a campaign of intimidation against plaintiff.

73.    From 2003 to 2006 defendant Kasakove terrified Mrs. Tanz with demonstrations of fierce anger over her inquiries into the true state of her finances and her $100,000 investment.

74.    As a result of defendant Kasakove's deliberate campaign of intimidation, defendant inflicted severe mental pain and anguish on Mrs. Tanz.

75.    Because of the control defendant Kasakove maintained over plaintiff and the intimidation that defendant applied to plaintiff, plaintiff began to suffer from anxiety related disorders.  These disorders, including insomnia and depression, were magnified by Plaintiff's shocking loss of her financial security.

76.    Plaintiff saw a doctor and the doctor prescribed medications for plaintiff and recommended further treatment.

77.    As a result of the said conduct of defendant, plaintiff was made sick, nervous, depressed, unable to sleep, and unable to properly eat and digest her food; plaintiff was compelled to obtain medical aid in an endeavor to restore her health and incurred medical bills; and plaintiff still suffers from the same psychological and physical injuries.

WHEREFORE, plaintiff respectfully requests the following relief:

(i)      On Count I, against Defendants Eugene Kasakove and Markas Financial

Services, Inc for Breach of Fiduciary Duty, special damages according to

proof at the time of trial, general damages according to proof at the time of

trial, disgorgement of ill-gotten gains and punitive damages according to

proof at time of trial;

(ii)     On Count II, against Defendant Eugene Kasakove for Intentional Infliction

Of Emotional Distress, special damages according to proof at the time of

trial, general damages according to proof at the time of trial, and punitive

damages according to proof at time of trial; and

(iii)    Such other relief the Court may deem reasonable and interest and costs of

the action.

Dated: March 17, 2008
      New York, New York

Respectfully submitted,

Richard M. Mortner (RM-0019)
40 Broad Street, 5th Floor
New York, NY 10004
Tel. 212-480-2181

Attorney for Plaintiff Phylis Tanz

13



# New Jersey State Business Gateway Service
### Corporate and Business Information Reporting

» Home

**Learn About...**

» Gateway Watch
  Services

» Business List
  Services

**Access Services...**

» Gateway Watch
  & Name Search

» Business List
  Search

**View Cart...**

» Shopping Cart

» Your History

## Gateway Watch - Business Entity Search Results

### Name List

Following are the names that match your search request and a listing of filing (registration) numbers associated with the names. If you wish to receive an online status report, or place an order for a standing certificate, click the appropriate box(es) to the right of the name(s) you are interested in. If you wish to request a timed update, indicate the date on which the update is to be produced. If you wish to perform a new search, your selections will be added to your Shopping Cart and saved until you are finished searching and proceed with your purchase.

**Fee Schedule**

| | |
|---|---|
| **Status Reports:** | **$ 5.00 each** |
| **Standing Certificates\*:** | **$ 40.00 each** |
| **Timed Updates:** | **$ 5.00 each** |

\* FLC and LLC Standing Certificates are $ 75.00 each.

**Payment Information**

Pay Online via **Credit Card** or **Depository Account**. Please note that you will not be charged for a Timed Update until it has been sent to you.

These results are current through **03/15/2008.**

**You Searched For:** Markas Financial Services

**Within** Business Entity Search: Business Entity Name

| | Business Entity Name | Filing Number | Type Code | Purchase Status Report | Purchase Standing Certificate | Purchase Timed Update (example date format: 01/23/2002) | Purchase Timed Update (example date format: 01/23/2002) | Purchase Timed Update (example date format: 01/23/2002) |
|---|---|---|---|---|---|---|---|---|
| 1 | MARKAS FINANCIAL SERVICES, INC. | 0100195269 | DP | ☐ | ☐ | | | |

**View Type Code Descriptions**

**Your search returned 1 matches.**
**1 records displayed on Page 1 of 1**

**If you have selected an item and would like to Perform a New Search, that item will be saved in your Shopping Cart.**

**Perform New Search**          **Proceed With Order**

Privacy Policy