UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                    :

PHYLLIS TANZ,                        :

                Plaintiff,      :

                                  :

        -against-           : **ECF CASE**

                                  : Case No. 08 Civ. 1462 (LAK)

EUGENE KASAKOVE and       :
MARKAS FINANCIAL SERVICES, INC.,   :

              Defendants.   :

----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Robert J. Grand
**DREIER LLP**
499 Park Avenue
New York, NY 10022
(212) 328-6100

*Attorneys for Defendants*
*Eugene Kasakove and*
*Markas Financial Services, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................2

THE COMPLAINT .......................................................................................4

LEGAL STANDARD ....................................................................................8

ARGUMENT................................................................................................10

   I.   PLAINTIFF CLAIM FOR BREACH OF FIDUCIARY DUTY
       MUST BE DISMISSED.......................................................................10

      A.  Plaintiff's Breach of Fiduciary Duty Claim is Barred
          By the Statute of Limitations ....................................................10

      B.  Plaintiff Cannot Invoke the Doctrine of Equitable Estoppel to
          Excuse her Failure to Comply with the Statute of Limitations ..........12

   II.  PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION FOR
       INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS............................20

CONCLUSION ............................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abercrombie v. Andrew College,*
438 F.Supp.2d 243 (S.D.N.Y. 2006)..............................................................12, 13, 15, 20

*Bastys v. Rothschild,*
No. 97 Civ. 5154, 2000 WL 1810107 (S.D.N.Y. Nov. 21, 2000) ....................................11

*Beckles v. George,*
No. 07 Civ. 0584, 2008 WL 92 (E.D.N.Y. Mar. 31, 2008) ........................................13, 20

*Bell Atlantic Corp. v. Twombley,*
127 S.Ct. 1955 (2007)...............................................................................................8, 9

*Bender v. City of New York,*
78 F.3d 787 (2d Cir. 1996).........................................................................................20

*Broder v. Cablevision Systems Corp.,*
418 F.3d 187 (2d Cir. 2005).........................................................................................9

*Buttry v. General Signal Corp.,*
68 F.3d 1488 (2d Cir. 1995)...................................................................................12, 13

*Campoverde v. Sony Pictures Entertainment,*
No. 01 Civ. 7775, 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002)....................................22

*Cerbone v. International Ladies Garment Workers Union,*
768 F.2d 45 (2d Cir. 1985)..........................................................................................12

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002)..........................................................................................9

*Cicone v. Hersh,*
530 F.Supp.2d 574 (S.D.N.Y. 2008).......................................................................10, 11

*Cooper v. Parsky,*
140 F.3d 443 (2d Cir. 1998).........................................................................................10

*Conley v. Gibson,*
355 U.S. 41 (1957)......................................................................................................8

*Darby Trading Inc. v. Shell Int'l Trading and Shipping Co. Ltd.,*
No. 07 Civ. 0400, 2008 WL 852787 (S.D.N.Y. Mar. 31, 2008) ........................................9

*Department of Econ. Development v. Arthur Andersen & Co.*,
 747 F.Supp. 922 (S.D.N.Y. 1990) ........................................................................20

*Druschke v. Banana Republic, Inc.*,
 359 F.Supp.2d 308 (S.D.N.Y. 2005)..............................................................20, 21

*Friedman v. Wheat First Securities, Inc.*,
 64 F.Supp.2d 338 (S.D.N.Y. 1999) ...............................................................12, 13

*Ghartey v. St. John's Queens Hospital*,
 869 F.2d 160 (2d Cir. 1989)...............................................................................10

*Insite Services Corp. v. American Electric Power Co.*,
 287 B.R. 79 (S.D.N.Y. 2002)...............................................................................15

*Iqbal v. Hasty*,
 490 F.3d 143 (2d Cir. 2007)..................................................................................9

*Levy v. Aaron Faber, Inc.*,
 148 F.R.D. 114 (S.D.N.Y 1993) ...........................................................................13

*Merine v. Prudential-Bache Utilty Fund, Inc.*,
 859 F.Supp. 715 (S.D.N.Y. 1994) ........................................................................10

*Netzer v. Continuity Graphic Associate, Inc.*,
 963 F.Supp. 1308 (S.D.N.Y. 1997) .............................................................12, 18, 19

*Papasan v. Allain*,
 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).............................................9

*Ross v. Mitsui Fudosan, Inc.*,
 2 F.Supp.2d 522 (S.D.N.Y. 1998) ........................................................................21

*Rotter v. Leahy*,
 93 F.Supp.2d 487 (S.D.N.Y. 2000) ......................................................................11

*Sira v. Morton*,
 380 F. 3d 57 (2d Cir. 1999)...................................................................................9

*Stuto v. Fleishman*,
 164 F.3d 820 (2d Cir. 1999)..........................................................................20, 21

*The Independent Order if Foresters v. Donald, Lufkin & Jenrette, Inc.*,
 157 F.3d 933 (2d Cir. 1998).................................................................................10

*Vasile v. Dean Witter Reynolds Inc.*,
  20 F.Supp.2d 465 (E.D.N.Y. 1998) ................................................................21

*Whitney Holdings, LTD v. Givotovsky*,
  988 F.Supp. 732, (S.D.N.Y. 1997) ............................................................11, 18

*Wolfson v. Wolfson*,
  03 Civ. 0954, 2004 WL 224508, 7(S.D.N.Y. 2004) ...................................14, 15


## STATE CASES

*Matter of Gross v. New York City Health and Hospitals Corp.*,
  122 A.D.2d 793, 505 N.Y.S.2d 678 (2nd Dep't 1986) ......................................13

*Herlihy v. Metropolitan Museum of Art*,
  214 A.D.2d 250, 633 N.Y.S.2d 106 (1st Dep't 1995) .......................................21

*Howell v. New York Post*,
  81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) ......................................................20

*Loengard v. Santa Fe Indust., Inc.*,
  70 N.Y.2d 262, 519 N.Y.S.2d 801 (1987) ......................................................10

*Roney v. Janis*,
  77.A.D.2d 555, N.Y.S.2d 333 (1st Dep't 1980) ...............................................14

*Rubenstein v. East River Tenants Corp.*,
  139 A.D.2d 451, 527 N.Y.S.2d 29 (1st Dep't 1988) ........................................14


## FEDERAL STATUTES

Fed. R. Civ. P. Rule 9(b)..................................................................................15

Fed. R. Civ. P. 12(b)(6)...............................................................................10, 21

Defendants Eugene Kasakove ("Kasakove" or "Defendant") and Markas Financial Services, Inc. ("MFS,") (collectively, "Defendants"), respectfully submit this Memorandum of Law in support of their motion to dismiss the Second Amended Complaint (the "Complaint")[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case arises out of a financial advisory relationship that existed between the Plaintiff and the Defendants from 1997 through 2001. Now, nearly <u>seven years</u> after the termination of that professional relationship, Plaintiff brings a complaint against Kasakove, her former financial advisor, and his company, MFS, for breach of fiduciary duty based on his purported mismanaging of her finances. Plaintiff also asserts a claim against Kasakove individually for intentional infliction of emotional distress based on various unspecified verbal threats and intimidation tactics which purportedly caused her to suffer from anxiety. These claims are utterly baseless and should be dismissed even at this early pleading stage.

In Count I of the Complaint, Plaintiff asserts a claim for breach of fiduciary duty, not based, however, on losses sustained in her securities accounts as a result of Kasakove's selection of unsuitable investments, but rather premised entirely on the incredible allegation that she depleted her savings based on Kasakove's purported advice that she was free to spend all of her money to maintain an extravagant lifestyle "that she had never known before" without regard for the balances in her bank accounts or investment accounts which she indisputably had access to. There is no accusation of

---

[1] References to the Complaint shall be indicated as "Comp. ¶_."

unauthorized trading, no accusation of self-dealing, no accusation that Kasakove, made

any misrepresentation about any of the securities he recommended for the Plaintiff and,

most critically, there is no allegation that the Plaintiff lost money as a result of

Kasakove's investment advice.  Put simply, the claim for breach of fiduciary duty

appears to be nothing more than Plaintiff's attempt to hold Defendants liable for her

reckless spending habits from 1997 through 2001.

    As demonstrated below, Plaintiff's claim for breach of fiduciary duty must be

dismissed because it is barred by the relevant three year statute of limitations.  Plaintiff

tacitly admits as much in her Complaint, and, in an effort to avoid dismissal on

limitations grounds, alleges that Defendants should be equitably estopped from asserting

a limitations defense based on certain purported misrepresentations made by Kasakove

after 2001, which "lulled" Plaintiff into a false sense of security about the state of her

finances such that she refrained from bringing this lawsuit until now.  These allegations

too are meritless.  As shown below, Plaintiff is not entitled to invoke the doctrine of

equitable estoppel here, because Plaintiff has not sufficiently alleged that Kasakove made

any actionable misrepresentations or otherwise engaged in any misconduct causing

Plaintiff to refrain from bringing her lawsuit, or that Plaintiff reasonably or justifiably

relied upon such misrepresentations in delaying her lawsuit for almost seven years.

Accordingly, Plaintiff's claim for breach of fiduciary duty must be dismissed as untimely.

    Irrespective of the timing of the commencement of the lawsuit, Plaintifff's

Complaint fails to adequately allege a claim for breach of fiduciary duty in any event,

because the facts that Plaintiff alleges the Defendants failed to disclose – the state of her

finances -- were readily available to her at any time during the course of her professional

relationship with Defendants in the form of her own bank statements and the monthly

account statements she received from the financial institution where her accounts were

held. Without passing judgment on Plaintiff's capacity to understand the nature of the

transactions reflected on those statements, it simply strains credulity that Plaintiff, despite

her alleged lack of financial sophistication, would have this Court believe that she was

incapable of checking the overall balance in her accounts. Plaintiff simply cannot

maintain a cause of action for breach of fiduciary duty based on a failure to disclose

information which she already possessed.

In Count II of the Complaint, Plaintiff asserts a claim for intentional infliction of

emotional distress based on the entirely conclusory allegations that Kasakove engaged in

a "campaign of intimidation" during which he "inflicted severe mental pain and anguish"

on the Plaintiff, which caused Plaintiff to suffer from anxiety. These allegations too are

utterly baseless, but even if true, fall well short of the extreme and outrageous conduct

required to be alleged in order to survive a motion to dismiss under New York law.

For the reasons set forth herein below, Plaintiff's Complaint should be dismissed

in its entirety.

## THE COMPLAINT

The relationship between the Plaintiff and Kasakove began in 1995 when

Kasakove began assisting the Plaintiff in organizing her medical and household bills,

which had become difficult for to manage due to her husband's illness at that time.

Comp. ¶¶ 12, 13.[2]

---

[2] Although the Complaint goes to great lengths to portray the Plaintiff as a 73 year old elderly widow, it
should be noted that according to Plaintiff's own allegations, at the time the Plaintiff commenced her

Plaintiff's husband died in late 1996, and during the difficult period that followed, Defendant offered to assist Plaintiff in the management of her financial affairs. Comp. ¶¶ 10, 15. According to the Complaint, at or around this time Defendant told Plaintiff that he was an accountant, stockbroker and financial manager, and that he provided these services through his company, the Defendant MFS. Comp. ¶ 15.

Plaintiff alleges that she was a very conservative investor who had enough money to meet her needs. Comp. ¶ 16. She further alleges that she informed Kasakove of her conservative nature and that she wished to live off of the income generated by her investments, not her principal, and that Kasakove agreed with that concept. Comp. ¶¶ 16-18.

On December 6, 1996, Plaintiff signed a power of attorney in favor of Kasakove, which, according to the Plaintiff, granted Kasakove broad powers to manage Plaintiff's financial affairs. Thereafter, Plaintiff transferred approximately $525,767 to a brokerage account managed by a broker suggested by Kasakove. Comp. ¶¶ 19, 21, 22. Plaintiff alleges that Kasakove not only assisted Plaintiff with her investments, but also helped Plaintiff pay her bills and worked with Plaintiff's lawyers to resolve her dispute with her late husband's children regarding her husband's estate. Comp. ¶ 24.

Plaintiff alleges that she so relied upon Kasakove for advice, that before she would spend any money she would ask Kasakove whether she could afford the proposed expense. Comp. ¶ 25. Plaintiff alleges that immediately upon assuming control over her finances, Kasakove provided inflated reports regarding the performance of her portfolio and that he consistently advised her that she "had plenty of money," and even that he

---

relationship with the defendant in 1995 she would have been approximately 60 years old, possibly 59, which hardly qualifies as elderly under any objective standard. Comp. ¶¶ 1, 13.

encouraged her to change her frugal lifestyle because she was a wealthy woman.  Comp.
¶¶ 25-27.

Based on these reports from Kasakove, and allegedly at Kasakove's suggestion,
Plaintiff began to spend money "on a lifestyle she had never known before," including
extended stays in Florida hotels (including at the Boca Raton Hotel), a cruise, and
memberships at exclusive clubs in New York.  Comp. ¶¶ 28-30.  According to Plaintiff,
Kasakove not only approved these expenditures but also encouraged Plaintiff to incur
them.  Comp. ¶ 30.

Plaintiff alleges -- in wholly conclusory fashion, and without any reference to a
particular time period -- that Kasakove misled her to believe that she had become
substantially wealthier than she was at the time she appointed Kasakove her "attorney-in-
fact," and that she believed she was living only off of her investment income earned
through Kasakove's financial management of her assets.  Comp. ¶ 31.  In truth, Plaintiff
alleges, her financial picture was much different than the information provided by
Kasakove, and as a result of Kasakove's financial management and recommendations
from 1997 through 2001, she "unknowingly" spent most of her principal.   Comp.
¶¶ 31-32.

This key allegation confirms that Plaintiff's relationship with Defendants as her
financial advisor ended in 2001.  The final five allegations in the "Factual Background"
section of the Complaint (¶¶ 33-37) refer to a business transaction entered into between
the Plaintiff and, purportedly, a private company controlled by Kasakove.  The
allegations regarding this business transaction do not in any way relate to any financial

management or investment advice rendered by Defendants to the Plaintiff, which purportedly caused Plaintiff to "unknowingly" spend or otherwise deplete her assets.

Thus, Plaintiff alleges that in 2001 Kasakove asked Plaintiff to transfer $100,000 to a private trucking company purportedly controlled by him, which she agreed to do, and that from 2001 through 2006, Kasakove repeatedly assured her that she had no reason to worry about her finances and that he would continue to provide her with adequate income from this investment. Comp. ¶¶ 33-34. In December 2006, however, Kasakove informed Plaintiff that he sold the trucking business and therefore could no longer provide her income from that investment. Comp. ¶ 35.

Plaintiff thus alleges that she realized for the first time in December 2006 that Kasakove's promises of ongoing income for her support were intended to lull her into failing to commence an action against Defendants for the mismanagement of her finances that occurred from 1997 through 2001. Plaintiff further alleges that she only received the return of her principal investment in the alleged trucking company, and did not share in any of the proceeds of the sale of that company, despite the fact that she was an investor in that company. Comp. ¶¶ 36-37.

Plaintiff also alleges that from 2003 through 2006, in an effort to maintain control over her financial life, Kasakove engaged in a "campaign of intimidation" against Plaintiff, which included "demonstrations of fierce anger," and which "inflicted severe mental pain and anguish" on Plaintiff, causing her to suffer from anxiety related disorders. Comp. ¶¶ 71-77.

Based on the foregoing allegations, Plaintiff asserts claims seeking money damages against Defendants for breach of fiduciary duty and against Kasakove,

individually, for intentional infliction of emotional distress.  Plaintiff also contends that

Defendants should be equitably estopped from asserting a statute of limitations defense,

because Kasakove's alleged promises and assurances that he would provide her with

income as a result of the $100,000 investment in the trucking company caused Plaintiff to

refrain from and delay commencing this lawsuit.

As demonstrated below, these allegations are insufficient to avoid dismissal under

Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

In 2007, the rules governing a motion to dismiss changed substantially.  No

longer can a plaintiff avoid dismissal by relying upon the oft-cited line from the Supreme

Court's decision in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which had provided that

"a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."  Instead, the Supreme Court has made clear that a plaintiff is now

held to higher burden, and cannot rely upon merely "a formulaic recitation of the

elements of a cause of action."  *Bell Atl. Corp. v. Twombley*, 127 S.Ct. 1955, 1964-65

(2007) (citations omitted).

In *Twombley*, the Supreme Court rejected the *Conley* standard because, under

*Conley,* "a wholly conclusory statement of claim would survive a motion to dismiss

whenever pleadings left open the possibility that a plaintiff might later establish some 'set

of [undisclosed] facts' to support recovery."  *Id.* at 1965.  Under the new standard,

however, factual allegations must be sufficient to raise a right to relief above the

speculative level and courts are no longer bound to accept as true a legal conclusion

couched as a factual allegation. *Id.*, citing *Papasan v. Allain*, 478 U.S. 265, 286, 106

S.Ct. 2932, 92 L.Ed.2d 209 (1986).

After *Twombley*, a complaint in this Circuit is measured against a flexible

"plausibility standard," which requires the pleader to "amplify a claim with some factual

allegations in those contexts where such amplification is needed to render the claim

*plausible*." *Darby Trading Inc. v. Shell Int'l Trading and Shipping Co. Ltd.*, 2008 WL

852787 (S.D.N.Y. March 31, 2008), citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.

2007) (emphasis in the original).   If a plaintiff fails to "nudge[] its claims across the line

from conceivable to plausible," the complaint must be dismissed.  *Twombley*, 127 S.Ct. at

1974; *Darby Trading*, 2008 WL 852787 at *3.

While generally a Rule 12(b)(6) motion is based solely on the allegations of the

complaint, in deciding the motion, a court may consider "any written instrument attached

to [the complaint] as an exhibit, materials incorporated in it by reference, and documents

that, although not incorporated by reference, are 'integral' to the complaint.'  *Sira v.

Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (citation omitted).  A document is "integral" to

the complaint where "the complaint relies heavily upon its terms and effects." *Chambers

v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).  Further, even if documents are

not referred to or incorporated in the complaint, if the parties do not dispute the

authenticity of the documents or the documents are central to plaintiffs' claims, the court

may treat them as part of the pleadings and dispose of the matter pursuant to Fed. R. Civ.

P. 12(b). *Broder v. Cablevision Systems Corp.,* 418 F.3d 187, 196 (2d Cir. 2005);

*Chambers, supra,* at 153.

As demonstrated below, on the basis of the allegations and the undisputed and authentic documents referenced in the Complaint or integral to its claims, plaintiff has failed to push her claims "across the line from conceivable to plausible." The Complaint should, therefore, be dismissed in its entirety.

## ARGUMENT

### I.

### PLAINTIFF'S CLAIM FOR BREACH OF FIDUCIARY DUTY MUST BE DISMISSED

**A.    Plaintiff's Breach of Fiduciary Duty Claim is Barred by the Statute of Limitations**

Where the dates set forth in a pleading show that an action is barred by a statue of limitations, a party may raise the defense in a motion pursuant to Fed. R. Civ. P. 12(b)(6). *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160, 162 (2d Cir. 1989).

New York law does not provide any single limitations period for breach of fiduciary duty claims. Rather, the applicable statute of limitations for breach of fiduciary duty claims depends on the substantive remedy sought by the Plaintiff. *Merine v. Prudential-Bache Utilty Fund, Inc.,* 859 F.Supp. 715, 725 (S.D.N.Y. 1994) (*citing Loengard v. Santa Fe Indust., Inc.*, 70 N.Y.2d 262, 267, 519 N.Y.S.2d 801 (1987)).  To this end, it is well established in the Second Circuit that a claim for a breach of fiduciary duty which seeks solely monetary relief under New York law is governed by a three year statute of limitations as set forth in CPLR 214(4).  *See Cicone v. Hersh*, 530 F.Supp.2d 574, 579 (S.D.N.Y. 2008) (*citing The Independent Order if Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942 (2d Cir. 1998)); *see also Cooper v. Parsky,* 140 F.3d

433, 441 (2d Cir. 1998); *Rotter v. Leahy*, 93 F.Supp.2d 487, 498 (S.D.N.Y. 2000)(holding that "[a]ctions for equitable relief for breach of fiduciary duty have a six-year statute of limitations, while actions seeking monetary damages for such breach have a three year statute of limitations.").

        In the instant case, Plaintiff seeks only monetary damages, therefore, the applicable statute of limitations is three years. Comp. ¶ 1 and subparagraph (i), p. 13. A claim for breach of fiduciary duty based on a failure to disclose information, such as the claim alleged here by Plaintiff, accrues, and the three year limitations period begins to run, upon the date of the alleged breach. *See Cicone v. Hersh, supra,* at 579; *see also Whitney Holdings, LTD v. Givotovsky,* 988 F.Supp. 732, 744 (S.D.N.Y. 1997) (LAK) ("Claims of constructive fraud, i.e. a fiduciary's simple non-disclosure of facts it is obligated to disclose, accrues upon breach"); *Bastys v. Rothschild,* No. 97 Civ. 5154, 2000 WL 1810107, at *34 (S.D.N.Y. Nov. 21, 2000) (same). Here, the crux of Plaintiff's breach of fiduciary duty claim is that from 1997 through 2001 Kasakove advised and indeed encouraged Plaintiff to spend money freely without disclosing to her at any time during this period that she was actually depleting her principal, and not just spending the interest income derived from her investments. Comp. ¶ 32. Plaintiff asserts that this failure to disclose the status of her finances is a breach of Defendants' fiduciary obligations they owed to her. Plaintiff does not allege that Defendants provided financial advisory services to her after 2001. Thus, the three year limitation period began to run at the latest sometime in 2001 when Defendants role as Plaintiff's financial advisor came to an end. Accordingly, the timeframe within which Plaintiff could have brought her breach

of fiduciary duty claim began has long since expired, and the claim must be dismissed as untimely.

> **B.      Plaintiff Cannot Invoke the Doctrine
> of Equitable Estoppel to Excuse Her
> Failure to Comply with the Statute of Limitations**

Plaintiff apparently recognizes the age of her breach of fiduciary duty claim, because in an effort to avoid dismissal on limitations grounds, she alleges that Defendants should be equitably estopped from asserting a limitations defense based on certain purported misrepresentations made by Kasakove in and after 2001, which "lulled" Plaintiff into a false sense of security about the state of her finances such that she refrained from bringing this lawsuit until now.  Comp. ¶¶ 39-45.

Under New York law, equitable estoppel refers to a court's power to bar the application of the statute of limitations due to representations or conduct by a party which induces the opposing party to postpone bringing suit on a known cause of action. *Abercrombie v. Andrew College*, 438 F.Supp.2d 243, 265 (S.D.N.Y. 2006).  Equitable estoppel ordinarily applies where, although the plaintiff is aware of his cause of action, his delay is excused because either the defendant misrepresented the length of the limitations period or "lulled the plaintiff into believing it was not necessary to commence the litigation." *Netzer v. Continuity Graphic Assoc., Inc.* 963 F.Supp. 1308, 1316 (S.D.N.Y. 1997); see also. *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir. 1995); *Cerbone v. Int'l Ladies Garment Workers Union,* 768 F.2d 45, 49-50 (2d Cir. 1985); *see also Friedman v. Wheat First Securities, Inc.,* 64 F.Supp 2d 338 (S.D.N.Y. 1999).  Equitable estoppel is only applicable in situations where plaintiff can demonstrate "egregious wrongdoing" by a defendant which prevented the plaintiff from bringing suit

on a cause of action of which plaintiff was aware.   *Id.*   Not surprising, both the federal and state courts in New York have held that the doctrine is to be "invoked sparingly, and only in exceptional circumstances." *Beckles v. George*, No. 07 Cv 0584, 2008 WL 926578, at *4 (E.D.N.Y. Mar. 31, 2008) (*citing Matter of Gross v. New York City Health and Hosps. Corp.*, 122 A.D.2d 793, 505 N.Y.S.2d 678 (2nd Dept. 1986). Further, a plaintiff's entitlement to invoke the doctrine of equitable estoppel can be determined on a motion to dismiss where the plaintiff fails to adequately plead the requisite facts. *Abercrombie, supra,* at 266.

In order to invoke equitable estoppel, a plaintiff must allege that: "(1) the defendant made a definite misrepresentation of fact and had reason to believe that the plaintiffs would rely on it; and (2) that plaintiff[s] reasonably relied on that misrepresentation to their detriment." *Friedman, supra*, at 346; *Buttry, supra,* at 1493. Further, to establish reasonable reliance plaintiff bears the burden of demonstrating that his "continuing ignorance was not attributable to lack of diligence on his part." *Levy v. Aaron Faber, Inc.,* 148 F.R.D. 114, 119 (S.D.N.Y. 1993). "Although the existence of a fiduciary duty can give rise to a presumption of fraudulent concealment, that presumption still cannot help a party who was not diligent in protecting her rights ..." *Id.*

In the instant case, Plaintiff alleges that sometime after her financial advisory relationship with Kasakove ended in 2001, Kasakove induced her to invest $100,000 in his trucking company based on the promise that such investment would provide her with "adequate" and "ongoing" income.  Comp. ¶¶ 33-34, 39-40.  Specifically, Plaintiff alleges that this promise in 2001, and Kasakove's repeated assurances that this investment would provide plaintiff with ongoing income on which to live, "lulled

plaintiff into believing that it was not necessary for her to seek the advice of counsel or commence litigation pertaining to improper representations and mismanagement of her funds." Comp. ¶ 39.  Based on these allegedly fraudulent misrepresentations (*see* Comp. ¶ 40), Plaintiff asserts that Defendants should be equitably estopped from asserting a statue of limitations defense to her breach of fiduciary duty claim.  Plaintiff argument fails for several reasons.

### (i)     Plaintiff Has Not Alleged Any Actionable Misrepresentation by Kasakove

First, Plaintiff has not alleged any actionable misrepresentation by Kasakove that caused her to delay in bringing suit.  New York law is clear that a plaintiff asserting fraudulent misrepresentation must allege: (i) a misrepresentation of a present or pre-existing fact; (ii) known to be untrue by the party making it; (iii) with the intent to deceive and for the purpose of inducing the other party to act upon it; (v) causing injury. *See Roney v. Janis,* 77.A.D.2d 555, N.Y.S.2d 333 (1st Dept. 1980).  Such allegations cannot be based upon a statement of future intentions, promises or expectations. *Rubenstein v. East River Tenants Corp.,* 139 A.D.2d 451, 454, 527 N.Y.S.2d 29 (1st Dept. 1988) (no cause of action for fraud arises where the only fraud alleged is a failure to fulfill promises to perform acts in the future).  Rather, Plaintiff must allege that Defendants, at the time the promissory representation was made, never intended to honor it.  *Id.*  Here, the misrepresentations that Plaintiff has identified in her Complaint -- Kasakove's purported promise to provide Plaintiff with adequate ongoing income in the future -- is at best a statement that pertains to a future event, which is insufficient to establish fraudulent misrepresentation.  Nowhere in the Complaint does Plaintiff allege that at the time Kasakove made this representation, he never intended to honor it.

Accordingly, Plaintiff has failed to adequately allege a claim for equitable estoppel based on Kasakove's fraudulent misrepresentations. *See Wolfson v. Wolfson,* 03 Civ. 0954, 2004 WL 224508, *7 (S.D.N.Y. Feb. 5, 2004) (Plaintiff's allegations that Defendant would "personally provide for the Plaintiff from his share of the settlement proceeds" pertains to a possible future event, which is insufficient to demonstrate fraud).

Nor has Plaintiff alleged any facts to support her contention that Kasakove knew his statement to be untrue and/or that he meant to deceive her.

### (ii)    Plaintiff's Allegations of Misrepresentation Do Not Meet the Particularity Standard of Fed R. Civ. P. 9(b)

In addition, because one of the elements of equitable estoppel is misrepresentation, a plaintiff seeking to invoke the doctrine and prevent a defendant from asserting a statute of limitations defense must allege the misrepresentation with sufficient particularity under Fed. R. Civ. P. Rule 9(b). *Abercrombie, supra,* at 266; *Insite Services Corp. v. American Electric Power Co.,* 287 B.R. 79, 86 (S.D.N.Y. 2002). To satisfy Rule 9(b), a complaint must specify: (i) precisely what statements were made, (ii) when and where the statements were made, (iii) identify the person who made the statements, and (iv) explain why the statements were fraudulent. *Id.* Plaintiff's allegations here fall well short of this pleading requirement.

Plaintiff alleges with respect to Kasakove's misrepresentations that, "from 2001 through 2006, defendant Kasakove fraudulently represented to plaintiff that defendant would provide plaintiff with ongoing income on which to live." Comp. ¶ 40. Plaintiff also generally alleges Kasakove's "promise to continue to provide plaintiff with adequate income," and again that Kasakove "fraudulently represented to plaintiff that he would provide her with income on which to live." Comp. ¶¶ 39, 43. Plaintiff alleges that she

justifiably relied on these misrepresentations in delaying bringing this lawsuit. Nowhere in the Complaint, however, does Plaintiff identify precisely what was said by Kasakove, nor does Plaintiff identify with any degree of specificity when the statements were made, alleging only that they were repeated during a six year period from 2001 through 2006. These hopelessly vague and generalized allegations, therefore, are wholly insufficient under Rule 9(b) and Plaintiff's equitable estoppel argument should be denied on this basis alone.

### (iii)   The Documentary Evidence Confirms That Plaintiff Cannot Allege Justifiable Reliance On Kasakove's Alleged Misrepresentations

Notwithstanding the foregoing, Plaintiff is not entitled to invoke equitable estoppel, because the documentary evidence confirms that Plaintiff has not alleged -- and cannot allege -- that she justifiably relied on Kasakove's purported misrepresentations in failing to timely commence this action.

In paragraph 39 of the Complaint, Plaintiff alleges that "[a]s a result of Kasakove's promise to continue to provide her with adequate income," she was "lulled" into "believing that it was not necessary for her to seek the advice of counsel or commence litigation" pertaining to Defendants' management of her finances. Contrary to Plaintiff's allegation, however, the documentary evidence confirms that Kasakove made no such promise upon which Plaintiff could justifiably rely.

In this regard, Plaintiff completely mischaracterizes the so-called $100,000 investment in a trucking company controlled by Kasakove. The "investment" was not in a trucking company, as Plaintiff alleges, but rather was a loan to a company called The Markas Group, which is a division of defendant MFS. The Markas Group is a factoring

business which operated to factor the receivables of a trucking company named Rainbow Transport Services, Inc. In 2001, Plaintiff invested $100,000 in The Markas Group. Copies of three of the four $25,000 checks evidencing this investment are annexed to the Kasakove Declaration as Exhibit 1. The loan to the Markas Group was likely one of the better investments that Plaintiff ever made. From 2002 through 2006 Plaintiff earned annual returns on her investment of more than 20%, 15%, 13%, 13% and 18%, respectively. Copies of the 1099-INT forms issued to Plaintiff reflecting the substantial returns on her investment are annexed to the Kasakove Declaration as Exhibit 2.[3] On or about July 2003, at Plaintiff's request, Kasakove sent Plaintiff a letter confirming the terms of this investment (the "July 2003" letter). The July 2003 letter, a copy of which is annexed to the Kasakove Declaration as Exhibit 3, states on its face that the investment is with the Markas Group and that Plaintiff's principal investment of $100,000 is guaranteed. However, in the next sentence, Kasakove unambiguously states that "I cannot guarantee the income on your investment." Plaintiff's allegations of an oral promise by Kasakove to provide her with ongoing income in the future are squarely contradicted by the documentary evidence. There can be no argument that Plaintiff was well aware, at least as early as July 2003, that Kasakove made no such promise to provide her with adequate income from this investment. There is, therefore, no basis for Plaintiff's allegation that she reasonably relied upon Kasakove's alleged oral promise to

---

[3] It should be noted that Plaintiff's pleading is arguably deceitful in that nowhere in her Complaint does Plaintiff acknowledge the success of this "investment," but instead states only that she "sustained no economic loss." Comp. ¶ 69.

provide her with income from the $100,000 investment in delaying the commencement of this lawsuit.[4]

(iv)    **Plaintiff has not Alleged that she Undertook any**
        **Due Diligence to Discover Defendant's Alleged Wrongful**
        **Conduct Prior to the Expiration of the Statute of Limitations**

Plaintiff alleges that Kasakove first made the alleged "promise" to provide her with ongoing adequate income in 2001. Comp. ¶¶ 33, 34. As noted above, in paragraph 39 of the Complaint, Plaintiff alleges that "[a]s a result of Kasakove's promise to continue to provide her with adequate income," she was "lulled" into "believing that it was not necessary for her to seek the advice of counsel or commence litigation" pertaining to Defendants' management of her finances. Thus, the allegation in paragraph 39 essentially concedes that Plaintiff knew as early as 2001 that she might have had a cause of action to pursue. Once Plaintiff was on notice that she had a potential claim, she was under a duty to make an inquiry and ascertain all of the relevant facts of her potential claim prior to the expiration of the limitations period. *See Netzer, supra,* at 1316-1317; *see also Whitney Holdings, Ltd., supra,* at 747 ("To invoke equitable estoppel, plaintiff must demonstrate due diligence in bringing the cause of action and reasonable care in ascertaining facts which might have led to discovery of defendant's wrong."). Plaintiff has not alleged that she took any actions during the applicable limitations period that might be construed as reasonable diligence. Indeed, nowhere in the Complaint does Plaintiff allege what inquiry she undertook to investigate the possibility of bringing claims after her suspicions allegedly were raised sometime in 2001. The only allegation in the Complaint that could possibly be considered such an

---

[4] When the trucking company was sold in 2006, Plaintiff received the return of her principal investment of $100,000. *See* Kasakove Declaration, Exhibit 4.

inquiry appears in paragraph 71, in the context of Plaintiff's claim for intentional

infliction of emotional distress. In that paragraph, Plaintiff alleges, as follows:

> 71.     In 2003, plaintiff began to ask questions to defendant
> Kasakove regarding his management of her finances and began to ask for
> assurances that she would not lose the $100,000 she had invested in
> Defendant Kasakove's for [sic] his trucking company.

This "inquiry" is wholly insufficient under the law to satisfy Plaintiff's due

diligence obligation.   Indeed, the fact that Plaintiff failed to make any inquiry beyond

asking questions of Kasakove is fatal to her equitable estoppel argument, because even if

Plaintiff received further reassurances from Kasakove in their alleged conversations from

2001 through 2006 (which she did not, as evidenced by the documentary evidence

discussed above), those reassurances are insufficient to satisfy her obligation of due

diligence. In this regard, the law is clear that a plaintiff who unreasonably relies on the

reassurances of a wrongdoer has not satisfied his obligation of due diligence in asserting

a claim for equitable estoppel. *See Netzer, supra,* at 1317 ("due diligence is not satisfied

by continued, passive reliance upon the alleged practitioners of fraud.").

Further, any time within the three year limitations period that began to run in

2001, Plaintiff could have, with very little effort, checked her bank account statements or

the monthly account statements she received from the financial institution where her

accounts were held to ascertain her principal balance in those accounts. She does not

allege that she ever made any such effort. Had she done so, she would have readily

discovered that the principal balance in her account had dwindled as a result of her

reckless spending.  Accordingly, because Plaintiff has failed to allege that she made any

inquiry at all into her potential claims, she is not entitled to apply the doctrine of

equitable estoppel to prevent dismissal of her claim for breach of fiduciary duty on statute

of limitations grounds.  For this reason, the Complaint should be dismissed as untimely. *See Abercrombie*, *supra,* at 267 (claim dismissed and equitable estoppel not applicable based on finding that plaintiff had not established due diligence where plaintiff failed to make a reasonable inquiry into the underlying facts.); *Dep't of Econ. Dev. v. Arthur Andersen & Co.,* 747 F.Supp. 922, 943 (S.D.N.Y. 1990) (dismissing cause of action because plaintiff made no allegation in complaint that it undertook any due diligence to investigate the possibility of bringing a claim once it was on notice of such a possibility); *Beckles, supra,* at *6 (complaint dismissed where court held equitable estoppel was unavailable to plaintiff who did not sufficiently allege due diligence in making an inquiry into the underlying facts).

## II.

## PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to maintain a cause of action for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.  *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)(*citing Howell v. New York Post*, 81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993).  It is well established that "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir. 1999); *see also Druschke v. Banana Republic, Inc.*, 359 F.Supp.2d

308, 314 (S.D.N.Y. 2005)(intentional infliction of emotional distress claim dismissed even where abusive and threatening statements were made directly to plaintiff by defendants); *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 262-63 , 633 N.Y.S.2d 106, 113-14 (1st Dep't 1995)( emotional distress claim dismissed because making of anti-Semitic slurs failed to rise to level of outrageous conduct required in New York).

A motion to dismiss pursuant to Rule 12(b)(6) of the federal Rules of Civil Procedure is an appropriate vehicle for disposing of ill-founded claims for intentional infliction of emotional distress. *See Stuto, supra,* 164 F.3d. 820 (2d Cir. 1999)(affirming Fed. R. Civ. P. rule 12(b)(6) dismissal of a claim for intentional infliction of emotional distress upon finding that the conduct alleged was not "extreme and outrageous" as a matter of law); *see also Vasile v. Dean Witter Reynolds Inc.,* 20 F.Supp.2d 465, 496 (E.D.N.Y. 1998); *Ross v. Mitsui Fudosan, Inc.,* 2 F.Supp.2d 522, 532 (S.D.N.Y. 1998). Thus, whether the alleged conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance. *Stuto v. Fleishman, supra,* at 827; *Druschke, supra,* at 314.

In the instant case, Plaintiff has failed to allege any conduct on the part of Kasakove that is sufficiently "extreme and outrageous" to meet the stringent New York standard as articulated in the abovementioned cases. The totality of Plaintiff's claim is that from 2003 through 2006 Kasakove, in an effort to maintain control over Plaintiff's financial life, engaged in a "campaign of intimidation," which included "demonstrations of fierce anger," and which "inflicted severe mental pain and anguish" on Plaintiff, causing her to suffer from anxiety related disorders. Comp. ¶¶ 71-77. Such bald, conclusory allegations cannot in any way be said to be "so outrageous and extreme as to

go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." Therefore, Plaintiff's claim for intentional infliction of emotional distress must be dismissed. *See Campoverde v. Sony Pictures Entertainment*, No. 01 Civ. 7775, 2002 WL 31163804, at *11 (S.D.N.Y. Sept. 30, 2002)(dismissing a claim for intentional infliction of emotional distress even where the complaint alleged that the defendants were "abusive" and "threatening," "kept plaintiffs behind a shut and guarded door" while refusing to let them leave, and ultimately threw them onto the street, because the claimed acts were not sufficiently egregious under the high standards for such claims under New York law).

## CONCLUSION

For the foregoing reasons, Defendants' respectfully request that this Court grant their motion to dismiss the Second Amended Complaint in its entirety.

Dated: New York, New York
      May 23, 2008

DREIER LLP

By:  /s/ Robert J. Grand
      Robert J. Grand
      499 Park Avenue
      New York, New York 10022
      Tel.: (212) 328-6100
      Fax:  (212) 328-6101

      *Attorneys for Defendants*
      *Eugene Kasakove and Markas*
      *Financial Services, Inc.*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

PHYLIS TANZ,

              Plaintiff,

              v.

EUGENE KASAKOVE and
MARKAS FINANCIAL SERVICES, INC.,

              Defendants.

: CIVIL ACTION NO. 08-cv-01462-LAK

: JURY TRIAL DEMANDED

---

## CIVIL ACTION: SECOND AMENDED COMPLAINT

Plaintiff Phylis Tanz, by her attorney Richard M. Mortner, Esq., for her complaint against defendants respectfully alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff, a widow, aged 73 years, alleges breach of fiduciary duty against her former attorney-in-fact, financial advisor and accountant Defendant Eugene Kasakove and his company Markas Financial Services Inc.  Plaintiff alleges that defendant Kasakove's actions, individually and through Markas Financial Services Inc., was malicious, oppressive and fraudulent, and plaintiff seeks lost investment income, disgorgement, punitive damages and attorneys' fees in excess of the statutory jurisdictional amount.  Plaintiff also seeks damages for intentional infliction of emotional distress in excess of the statutory jurisdictional amount.

## VENUE AND JURISDICTION

2.     Subject matter jurisdiction exists based on 28 U.S.C. §1332, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because the controversy is between citizens of different states.

3.     Personal jurisdiction over the defendants also is proper based on New York Civil Practice Law and Rules § 302, and Rule 4 of the Federal Rules of Civil Procedure, subparagraphs (e) and (h).

4.     Personal jurisdiction and venue in this action are predicated on 28 U.S.C. § 1391(a), since a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

## THE PARTIES

5.     Plaintiff, Phylis Tanz, is a citizen of the State of New York.  She resides at 715 Park Avenue, New York, NY 10021

6.     Upon information and belief, defendant Eugene Kasakove is a citizen of the State of New Jersey, and resides at 167 Stephens Park Road, Hackettstown, NJ 07840.

7.     Upon information and belief, defendant Markas Financial Services, Inc. ("MFS") is incorporated in the State of New Jersey, with its principal place of business at 167 Stephens Park Road, Hackettstown, NJ 07840.

8.     Upon information and belief, defendant Kasakove is the president of MFS.

9.     Upon information and belief, defendant MFS, at all material times herein, was acting on its own behalf and as an agent for Defendant Kasakove.  All acts and omissions by

MFS alleged herein are imputable to Defendant Kasakove by virtue of the aforesaid agency relationship.

## FACTUAL BACKGROUND

10.    Plaintiff, Mrs. Tanz, married Norman Tanz in 1989.  On November 3, 1996, after battling cancer for two years, Mr. Tanz died.

11.    Mrs. Tanz was a dedicated wife, mother and homemaker. Mrs. Tanz's life as a housewife did not equip her with the financial sophistication she needed following the death of her husband.  However, she was acutely aware that she needed to use the utmost caution in handling her limited assets.

12.    During her husband's illness and in the difficult period that followed, Mrs. Tanz found that she could not keep up with the medical and household bills.

13.    Thus, in the period just prior to Norman Tanz's death, Defendant Kasakove, who had been Mrs. Tanz's accountant since 1995, began coming to Mrs. Tanz's home and helping Mrs. Tanz organize her bills.

14.    Following the passing of her husband Mrs. Tanz was under enormous stress.  In addition to grieving over her loss, she was sick with Bell's palsy, type-2 diabetes, and high blood pressure.  In addition, her son suffered a heart attack and had to undergo open heart surgery, Mrs. Tanz's daughter became ill with multiple sclerosis, and lastly, her step-children were contesting her late-husband's will.

15.    During this difficult period, Defendant Kasakove visited Mrs. Tanz in her home and offered to take over the management of Mrs. Tanz's financial matters.  He told Mrs.

Tanz he was not only an accountant, but that he also provided expert services as a stockbroker and financial manager through his company, defendant MFS.

16.     As an elderly woman, Mrs. Tanz firmly believed that the best thing to do was to invest her money very safely and live off of the interest.  She had enough for her needs and she wanted the emotional security of knowing that her money was prudently managed.

17.     Mrs. Tanz told Defendant Kasakove she needed to feel safe and secure; she was very conservative and wanted to live off of her income, not her principal.

18.     Defendant Kasakove agreed with this concept.

19.     On December 6, 1996, one month after Norman Tanz died; Mrs. Tanz signed a power of attorney prepared by defendant Kasakove, which accorded defendant Kasakove broad powers over every aspect of Mrs. Tanz's financial life (the "Power of Attorney").

20.     Defendant Kasakove billed Mrs. Tanz for his service by sending invoices in the name of his company, defendant Markas Financial Services, Inc.

21.     After obtaining Mrs. Tanz's Power of Attorney, defendant Kasakove persuaded Mrs. Tanz to move her nest egg of approximately $493,767 from her broker for the prior 17 years to a new broker who was a friend of defendant Kasakove, Donn Kerr.  In this way defendant Kasakove cut Mrs. Tanz off from the last of her advisors and protectors.

22.     Eventually, plaintiff invested another $31, 000, making the total amount of her funds placed under defendants' control $525,767.

23.     Mrs. Tanz owned no property or tangible assets of any significant value. Thus, defendant Kasakove exercised control over virtually all of plaintiff's assets.

24.     Mrs. Tanz lodged complete trust in defendant Kasakove.  Defendant Kasakove supervised every aspect of Mrs. Tanz's financial life, including the payment of her bills.  In addition, as Mrs. Tanz's attorney-in-fact, defendant Kasakove assisted Mrs. Tanz in working with her lawyers to resolve her dispute with her late husband's children and to close the estate.

25.     Mrs. Tanz so relied upon defendant Kasakove that before she would spend any money she would ask Defendant Kasakove whether she could afford the proposed expense.

26.     Immediately upon taking control of Mrs. Tanz's financial life, defendant Kasakove began providing Mrs. Tanz falsely inflated reports regarding the performance of her portfolio under defendants' management.  Defendant Kasakove consistently advised Mrs. Tanz that she "had plenty of money."

27.     Time and again, defendant Kasakove assured Mrs. Tanz that she was a wealthy woman, assured her that she could afford the expenses she was considering and encouraged her to change her frugal lifestyle.

28.     Thus, Mrs. Tanz began to spend money on a lifestyle she had never known before.

29.     Defendant Kasakove advised Mrs. Tanz that these expenditures were being paid from her investment income.

30.     Thus, defendant Kasakove approved, and indeed encouraged, Mrs. Tanz to incur expenses on luxury items such as the following:

      a.      Extended stays in Florida at the Boca Raton Hotel, Renaissance Hotel, Holiday Inn Hotel;

      b.      A cruise on the Radisson through the Panama Canal and to Costa Rica;

      c.      Membership at The Friars Club; and

5

        d.      Membership at the Town Club.

31.    Defendant Kasakove misled Mrs. Tanz into falsely believing that, as a result of defendants' management of her portfolio and financial affairs, she had become substantially wealthier than when she had appointed Defendant Kasakove her attorney-in-fact, and that she was living on the investment income defendants had earned for her through management of her assets.

32.    However, the reality of Mrs. Tanz's financial health was quite different than the rosy picture represented by defendant Kasakove.  In fact, during the period 1997 to 2001, as a result of defendant Kasakove's financial management, misleading and false reports and financial recommendations, Plaintiff had unknowingly spent most of her principal.

33.    In 2001, defendant Kasakove took advantage of Mrs. Tanz's trust and confidence by asking Mrs. Tanz to transfer $100,000 to a privately held trucking company controlled by Defendant Kasakove, which she agreed to do.

34.    Following Plaintiff's $100,000 investment in defendant's trucking company in 2001 until 2006, defendant Kasakove repeatedly assured plaintiff that she should not worry about her finances, and that he would continue to provide her with adequate income from her investment in his company.

35.    However, in December 2006, defendant Kasakove advised plaintiff that he would no longer provide her with income from her investment in his trucking company because he claimed to have sold the business.

36.    Thus, in December 2006, plaintiff realized that defendant's assurances and promises of ongoing income for her support were intended to lull her into failing to commence an action against defendant for the mismanagement of her finances.

37.    Moreover, notwithstanding the fact that Mrs. Tanz was an investor in the trucking company, Defendant Kasakove only returned to Plaintiff her initial investment, but paid Plaintiff no share of the proceeds of the alleged sale of the trucking company.

38.

### EQUITABLE ESTOPPEL

39.    As a result of defendant Kasakove's promise to continue to provide plaintiff with adequate income, defendant Kasakove lulled plaintiff into believing that it was not necessary for her to seek the advice of counsel or commence litigation pertaining to defendants' improper representations and mismanagement of her funds.

40.    Defendant Kasakove misrepresented to plaintiff that (i) under his financial management she would spend only her investment income; (ii) that in the period 1997 to 2001 plaintiff had plenty of money for the expenses she was incurring; and (iii) from 2001 to 2006, defendant Kasakove fraudulently represented to plaintiff that defendant would provide plaintiff with ongoing income on which to live.

41.    Based on Mrs. Tanz's lack of financial knowledge and the personal hardships she was enduring, coupled with the fact that defendant Kasakove had taken upon himself the role of her fiduciary, Mrs. Tanz justifiably relied on Defendant Kasakove's decisions and recommendations and believed defendant Kasakove's misrepresentations.  As a result, plaintiff and was lulled into a false sense of security by Defendant Kasakove.

42.    Plaintiff, in reasonable reliance on defendant Kasakove's assurances, delayed in bringing this suit until now.

43. Defendant Kasakove, as plaintiff's fiduciary, wrongly induced plaintiff to invest in his own company, and fraudulently represented to plaintiff that he would provide her with income on which to live, in order to lull plaintiff so that she would refrain from commencing legal action against defendant Kasakove for his breaches of his fiduciary duty.

44. Thus, defendant's conduct caused the plaintiff to delay the bringing of this lawsuit.

45. Based on the foregoing, in the event that defendants assert the limitations defense, defendants may be estopped from taking advantage of defendant Kasakove's own wrongful conduct by the application of the doctrine of equitable estoppel.

## COUNT I
### (Breach of Fiduciary Duty)

46. Plaintiff repeats and realleges each of the allegations asserted in paragraphs 1 through 45 of this complaint as though fully stated herein.

47. Mrs. Tanz reposed trust and confidence in Defendant Kasakove, and Defendant Kasakove took advantage of Mrs. Tanz's trust and lack of sophistication.

48. In addition, Defendant Kasakove assumed a position of strength in relation to Mrs. Tanz by holding himself out as an expert in money managing.

49. Defendant Kasakove imprudently advised Mrs. Tanz that she depart from her frugal lifestyle and incur expenses she had not previously incurred at any time in her life.

50. Defendant Kasakove failed to advise Mrs. Tanz that the spending he recommended she undertake was actually being paid for out of her principal.

8

51.     As a result Mrs. Tanz without her knowledge depleted her financial resources, thereby depriving herself of adequate principal to generate the investment income she had planned to live on as an elderly widow.

52.     Thus, defendant Kasakove made fraudulent misstatements of fact to Mrs. Tanz and fraudulently concealed pertinent information, to wit, that the extravagant personal expenses he advised her to incur were being paid for out of her original principal.

53.     Defendant Kasakove, as Mrs. Tanz's attorney-in-fact, owed a duty to her to disclose any information that was relevant to the affairs entrusted to him.  Specifically, Defendant Kasakove owed a duty to Mrs. Tanz to manage her accounts in the conservative manner that she had requested, to properly advise her, to disclose all pertinent information and avoid all self-dealing.

54.     Defendant Kasakove's duty was heightened in the instant case due to the fact that Defendant Kasakove had vastly superior knowledge to Mrs. Tanz.

55.     Defendant Kasakove, as Mrs. Tanz's attorney-in-fact, breached his duty to satisfy the high standard of loyalty to which all fiduciaries are bound, including the duty that all disclosures be complete and unequivocal.

56.     Defendant Kasakove breached his fiduciary duty by failing to disclose the true state of Mrs. Tanz's investment portfolio.

57.     Defendant Kasakove, as Mrs. Tanz's attorney-in-fact, breached his fiduciary duty by failing to advise his client of facts material to her investment decisions, *i.e.*, he failed to advise Mrs. Tanz that the spending that he was recommending she undertake was being paid out of her principal – not her investment income, as she believed.

9

58.    Defendant Kasakove breached his duty to act with regard to Mrs. Tanz's financial matters, which had been entrusted to him, with the same degree of prudence and diligence as prudent individuals of discretion and intelligence employ in their own like affairs.

59.    Defendant Kasakove breached his fiduciary duty of prudence by advising Mrs. Tanz that she depart from her frugal lifestyle and incur expenses that depleted her principal.

60.    Defendant Kasakove breached his duty, as Mrs. Tanz's attorney-in-fact, to act in the utmost good faith and undivided loyalty toward his principal, Mrs. Tanz, and to act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing.

61.    Similarly, defendant Kasakove breached his duty, as Mrs. Tanz's attorney-in-fact, to utilize the Power of Attorney he had been given for the benefit of his principal, to achieve what is in Mrs. Tanz's best interest.

62.    Defendant Kasakove breached his duty of loyalty and his duty to act for the benefit of his principal's best interest by misleading Mrs. Tanz into believing as a result of Defendant's management of her finances, she had plenty of money and had doubled her principal, and that any losses that occurred subsequently were due to market forces – not spending and mismanagement.

63.    Upon information and belief, defendant Kasakove did this so that Mrs. Tanz would provide $100,000 for defendant Kasakove's trucking company.

64.    In other words, defendant Kasakove misled Mrs. Tanz regarding the state of her finances under his management in order to cause her to make her funds available for his personal needs.

65.    Accordingly, as Mrs. Tanz's attorney-in-fact , Defendant Kasakove breached his fiduciary duties (i) to make all disclosures complete and unequivocal, (ii) to advise

10

his client of facts material to her investment decisions, (iii) to act with regard to Mrs. Tanz's

financial matters, which had been entrusted to him, with the same degree of prudence and

diligence as prudent individuals of discretion and intelligence employ in their own like affairs,

(iv) to act with the utmost loyalty and (v) to act in his principal's best interest.

66.     Based on the foregoing, defendant Kasakove was responsible for the

depleting of plaintiff's financial resources and thus depriving her of adequate investment income

on which to live out her senior years.

67.     As a result, Plaintiff is entitled to receive damages resulting from her loss

of investment income.

68.     Based on the foregoing, defendant Kasakove has exhibited a very high

degree of moral culpability.  Therefore, defendant Kasakove's breach of his fiduciary duties

gives rise to liability even in the absence of damages, and plaintiff is entitled to receive punitive

damages.

69.     Defendant Kasakove is also required to disgorge any ill-gotten gain arising

from the investment of $100,000 of Mrs. Tanz's funds in defendant Kasakove's trucking

company, even if Plaintiff sustained no direct economic loss.


### COUNT II
### AGAINST DEFENDANT KASAKOVE
#### (Intentional Infliction of Emotional Distress)

70.     Plaintiff repeats and realleges each of the allegations asserted in

paragraphs 1 through 69 of this complaint as though fully stated herein.

11

71.     In 2003, plaintiff began to ask questions to defendant Kasakove regarding his management of her finances and began to ask for assurances that she would not lose the $100,000 she had invested in Defendant Kasakove's for his trucking company.

72.     In response to plaintiff's efforts to regain control of her financial life and to rest that control from defendant Kasakove, defendant Kasakove began a campaign of intimidation against plaintiff.

73.     From 2003 to 2006 defendant Kasakove terrified Mrs. Tanz with demonstrations of fierce anger over her inquiries into the true state of her finances and her $100,000 investment.

74.     As a result of defendant Kasakove's deliberate campaign of intimidation, defendant inflicted severe mental pain and anguish on Mrs. Tanz.

75.     Because of the control defendant Kasakove maintained over plaintiff and the intimidation that defendant applied to plaintiff, plaintiff began to suffer from anxiety related disorders.  These disorders, including insomnia and depression, were magnified by Plaintiff's shocking loss of her financial security.

76.     Plaintiff saw a doctor and the doctor prescribed medications for plaintiff and recommended further treatment.

77.     As a result of the said conduct of defendant, plaintiff was made sick, nervous, depressed, unable to sleep, and unable to properly eat and digest her food; plaintiff was compelled to obtain medical aid in an endeavor to restore her health and incurred medical bills; and plaintiff still suffers from the same psychological and physical injuries.

WHEREFORE, plaintiff respectfully requests the following relief:

12

(i)     On Count I, against Defendants Eugene Kasakove and Markas Financial

        Services, Inc for Breach of Fiduciary Duty, special damages according to

        proof at the time of trial, general damages according to proof at the time of

        trial, disgorgement of ill-gotten gains and punitive damages according to

        proof at time of trial;

(ii)    On Count II, against Defendant Eugene Kasakove for Intentional Infliction

        Of Emotional Distress, special damages according to proof at the time of

        trial, general damages according to proof at the time of trial, and punitive

        damages according to proof at time of trial; and

(iii)   Such other relief the Court may deem reasonable and interest and costs of

        the action.

Dated: March 17, 2008
        New York, New York

                                    Respectfully submitted,


                                    Richard M. Mortner (RM-0019)
                                    40 Broad Street, 5th Floor
                                    New York, NY 10004
                                    Tel. 212-480-2181


                                    Attorney for Plaintiff Phylis Tanz

13