UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                        :
PHYLIS TANZ,                            :
                                        :
                 Plaintiff,             :    CIVIL ACTION NO. 08-cv-01462- LAK
                                        :
          - against-                    :
                                        :
EUGENE KASAKOVE,                        :
MARKAS FINANCIAL SERVICES, INC.,        :
                                        :
                 Defendants.            :
_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B) (6)**

The Mortner Law Office, PC
Richard M. Mortner (RM-0019)
40 Broad Street, 5th Floor
New York, NY 10004
Tel. 212-480-2181

Attorney for Plaintiff Phylis Tanz

# Table of Contents

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

      a.   Defendant Kasakove's Role as Plaintiff's Fiduciary and Attorney-in-Fact ........ 2

      b.   Defendants' Breach of Fiduciary Duty ................................................................. 3

      c.   Defendant Kasakove's Self-Dealing .................................................................... 5

      d.   Defendants' Wrongful Attempt to Characterize the Investment as a Loan. ....... 6

      e.   Defendant Kasakove's Continuing Role as Fiduciary until December 2006...... 7

      f.   The Grounds For Equitable Estoppel .................................................................. 8

      g.   Intentional Infliction of Emotional Distress...................................................... 10

ARGUMENT ............................................................................................................. 11

    I.   STANDARD OF REVIEW ......................................................................... 11

      a.   The Standard of Review for Motions to Dismiss on the Pleadings ................. 11

      b.   Special Considerations for Questions Pertaining to Statutes of Limitations. ... 12

    II.   THE COMPLAINT AMPLY PLEADS THAT DEFENDANTS SHOULD BE EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE OF LIMITATIONS AS A DEFENSE ................................................................................................. 13

      a.   Defendants' Argument that the Complaint Lacks the Elements of Fraudulent Concealment is Irrelevant........................................................................................ 14

      b.   The Complaint Properly Pleads that Defendant's Conduct Lulled Plaintiff into Allowing the Statute to Run. ................................................................................... 15

    III.  THE COMPLAINT PROPERLY PLEADS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ........................................................................ 17

CONCLUSION.......................................................................................................... 19

## Cases

*Abdul-Alim Amin v. Universal Life Ins. Co.,* 706 F.2d 638 (5th Cir.1983)...................................12

*Abercrombie v. Andrew College*, 438 F.Supp.2d 243 (S.D.N.Y. 2006) ........................................13

Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45 (2d. Cir. 1985) 13, 15, 16

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir.1991), cert. denied, 503 U.S. 960,

    112 S.Ct. 1561 (1992) .........................................................................................3, 6, 7, 8, 10

*Egelston v. State University College,* 535 F.2d 752 (2d Cir.1976)................................................12

*F.D.I.C. v. Pelletreau & Pelletreau*, 965 F.Supp. 381 (E.D.N.Y. 1997) ................................12, 13

*Gill Farms Inc. v. Darrow*, 256 A.D.2d 995, 682 N.Y.S.2d 306 (3rd Dept. 1998) ......................18

*Henaghan v. Dicuia*, 98 A.D.2d 742, 469 N.Y.S.2d 446 (2d Dep't 1983)....................................19

*In re Tamoxifen Citrate Antitrust Litig.,* 429 F.3d 370, 384 (2d Cir.2005), *amended by* 466 F.3d

    187, 200 (2d Cir. 2006) ...........................................................................................................12

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007)............................................11

*Nader v. General Motors Corp.*, 25 N.Y.2d 560, 307 N.Y.S.2d 647 (1970)................................18

*Ortiz v. Cornetta,* 867 F.2d 146 (2d Cir.1989)............................................................................12

*Renz v. Beeman*, 589 F.2d 735 (2nd Cir. 1978).....................................................................16, 17

*Robinson v. City of New York*, 24 A.D.2d 260, 265 N.Y.S.2d 566 (1st Dept. 1965)....................16

*Schroeder v. Young*, 161 U.S. 334, 16 S.Ct. 512 (1896)..............................................................15

*Shannon v. MTA Metro-North R.R.*, 269 A.D.2d 218, 704 N.Y.S.2d 208 (1st Dept. 2000).........18

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ....................12

*Vasarhelyi v. New School for Social Research*, 230 A.D.2d 658, 646 N.Y.S.2d 795 (1st Dept.

    1996)......................................................................................................................................18

## **Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6) ................................................................. 1, 11, 12

Rule 9(b), Federal Rules of Civil Procedure .................................................................. 14

## **Treatises**

51 Am. Jur. 2d Limitation of Actions § 52 .................................................................. 12

## PRELIMINARY STATEMENT

Plaintiff Phylis Tanz ("Plaintiff"), by her attorney respectfully submits this memorandum of law in opposition to the motion of defendants Eugene Kasakove and his company Markas Financial Services, Inc. ("Defendants") to dismiss the Second Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

Plaintiff, Phylis Tanz, a widow, aged 73 years, alleges breach of fiduciary duty against her former attorney-in-fact, financial advisor and accountant defendant Eugene Kasakove and his company defendant Markas Financial Services Inc. Plaintiff seeks lost investment income, disgorgement, punitive damages and attorneys' fees. Plaintiff also seeks damages for intentional infliction of emotional distress. (*See* Seconded Amended Complaint (hereinafter referred to as the "Complaint" or "Comp."), annexed as Exhibit A to the Declaration of Richard M. Mortner, Esq., dated June 16, 2008 (the "Mortner Declaration"), which is submitted herewith.)

Notwithstanding, the various unsupported attacks spread through the defendant's motion papers, the issues that are actually presented in this motion, are narrow; (i) whether to deny at the pleading stage plaintiff's invocation of the doctrine of equitably estoppel against defendants' assertion of a limitations defense; and (ii) whether plaintiff has stated a cause of action for intentional infliction of emotional distress.

Statements contained in defendants' motion to dismiss further demonstrate defendant Kasakove's willingness to misrepresent the truth and violate the fundamental duties of a fiduciary.

First, defendant Kasakove boldly admits in the motion to dismiss that at the time he was

Mrs. Tanz's financial manager, he advised Mrs. Tanz to invest $100,000 in his own company, as it now appears, ***the very same company through which, as her fiduciary, he managed her personal finances***.

Next, defendant wrongfully attempts to characterize plaintiff's investment in his company as a loan. However, ***in the investment offering document that he gave to plaintiff, defendant Kasakove clearly states it to be an investment.*** Moreover, on the basis of calling plaintiff's investment a loan, defendant Kasakove wrongfully denies plaintiff her share of the proceeds from the sale of the company in which she invested.

Finally, in the instant motion defendant alleges, "Plaintiff's relationship with Defendants as her financial advisor ended in 2001." However, in ***a 2003 letter from defendant Kasakove to Mrs. Tanz, defendant states specifically that he is continuing to keep her as a client for his financial management services***, even as he is reducing his client list.

In view of defendant Kasakove's documented ethical lapses misrepresentations, there can be no doubt that defendant Kasakove himself has "nudged" plaintiff's breach of fiduciary duty claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombley,* 127 S.Ct. *1955,* 1964-65 (2007).


## STATEMENT OF FACTS

### a. <u>Defendant Kasakove's Role as Plaintiff's Fiduciary and Attorney-in-Fact</u>

On December 6, 1996, one month after the death of Plaintiff's husband; Mrs. Tanz signed a power of attorney prepared by defendant Kasakove, which accorded defendant Kasakove broad powers over every aspect of Mrs. Tanz's financial life (the "Power of Attorney"). Comp., ¶19. The Power of Attorney executed by Mrs. Tanz in favor defendant Kasakove is annexed as

Exhibit B to the Mortner Declaration.[1]

After obtaining Mrs. Tanz's Power of Attorney, defendant Kasakove persuaded Mrs. Tanz to move her nest egg of approximately $493,767 from her broker for the prior 17 years to a new broker who was a friend of defendant Kasakove, Donn Kerr. In this way defendant Kasakove cut Mrs. Tanz off from the last of her advisors and protectors. Comp., ¶21.

Eventually, plaintiff invested another $31, 000, making the total amount of her funds placed under defendants' control $525,767. Comp., ¶22.

Mrs. Tanz owned no property or tangible assets of any significant value. Thus, defendant Kasakove exercised control over virtually all of plaintiff's assets. Comp., ¶23.

Mrs. Tanz lodged complete trust in defendant Kasakove. Defendant Kasakove supervised every aspect of Mrs. Tanz's financial life, including the payment of her bills. In addition, as Mrs. Tanz's attorney-in-fact, defendant Kasakove assisted Mrs. Tanz in working with her lawyers to resolve her dispute with her late husband's children and to close the estate. Comp., ¶24.

Mrs. Tanz so relied upon defendant Kasakove that before spending any money she would ask Defendant Kasakove whether she could afford the proposed expense. Comp., ¶25.

b. **Defendants' Breach of Fiduciary Duty**

Immediately upon taking control of Mrs. Tanz's financial life, defendant Kasakove began providing Mrs. Tanz falsely inflated reports regarding the performance of her portfolio under

---

[1] Plaintiff relied upon the Power of Attorney in framing the Complaint herein. See the Mortner Declaration at ¶¶3 and 4. Therefore, in connection with the instant 12(b)(6) motion, Plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561 (1992).

defendants' management.  Defendant Kasakove consistently advised Mrs. Tanz that she "had plenty of money."  Comp., ¶26.

Time and again, defendant Kasakove assured Mrs. Tanz that she was a wealthy woman, assured her that she could afford the expenses she was considering and encouraged her to change her frugal lifestyle.  Comp., ¶27.  Thus, Mrs. Tanz began to spend money on a lifestyle she had never known before.  Comp., ¶28.

Defendant Kasakove advised Mrs. Tanz that these expenditures were being paid from her investment income.  Comp., ¶29.

Defendant Kasakove approved, and indeed encouraged, Mrs. Tanz to incur expenses on luxury items such as the following:

   a.   Extended stays in Florida at the Boca Raton Hotel, Renaissance Hotel, Holiday Inn Hotel;
   b.   A cruise on the Radisson through the Panama Canal and to Costa Rica;
   c.   Membership at The Friars Club; and
   d.   Membership at the Town Club.

Comp., ¶30.

Defendant Kasakove misled Mrs. Tanz into falsely believing that, as a result of defendants' management of her portfolio and financial affairs, she had become substantially wealthier than when she had appointed Defendant Kasakove her attorney-in-fact, and that she was living on the investment income defendants had earned for her through management of her assets.  Comp., ¶31.

However, the reality of Mrs. Tanz's financial health was quite different than the rosy picture represented by defendant Kasakove.  In fact, during the period 1997 to 2001, as a result of defendant Kasakove's financial management, misleading and false reports and financial recommendations, Plaintiff had unknowingly spent most of her principal.    Comp., ¶32.

Defendant Kasakove breached his duty of loyalty and his duty to act for the benefit of his principal's best interest by misleading Mrs. Tanz into believing that as a result of Defendant's management of her finances, she had plenty of money and had doubled her principal, and that any losses that occurred subsequently were due to market forces – not spending and mismanagement.  Comp., ¶62.

### c.  **Defendant Kasakove's Self-Dealing**

Upon information and belief, the reason that defendant Kasakove told Mrs. Tanz she was a rich woman and encouraged her to spend money was so that Mrs. Tanz would provide money to defendant Kasakove's own business.    Comp., ¶63.

Thus, in July 2001, defendant Kasakove took advantage of Mrs. Tanz's trust and confidence by asking Mrs. Tanz to transfer $100,000 to a privately held company controlled by Defendant Kasakove, which she agreed to do.  Comp., ¶33.

In other words, defendant Kasakove misled Mrs. Tanz regarding the state of her finances under his management in order to cause her to make her funds available to him for his personal needs.  Comp., ¶64.

Mrs. Tanz never fully understood her $100,000 investment and in making the investment she relied solely upon the advice of her fiduciary, defendant Kasakove.  In fact, Mrs. Tanz believed her investment was in a trucking company; accordingly, that is how the investment is described in the Complaint herein.

However, defendants claim in the instant motion that Mrs. Tanz's investment was not in a trucking company and was not even an investment.  "[R]ather, defendants argue, "[it] was a loan to a company called The Markas Group, which is a division of defendant MFS.  The Markas

Group is a factoring business which operated to factor the receivables of a trucking company named Rainbow Transport Services, Inc." (*See* Defendants' Memorandum, p.16.)

It is astonishing that defendants now admit that defendant Kasakove advised Mrs. Tanz to invest in ***the very company through which he, as her fiduciary, managed her finances***.


### d.  Defendants' Wrongful Attempt to Characterize the Investment as a Loan.

As noted above, defendants argue that Mrs. Tanz's investment was, in fact, a loan, and accordingly, defendants argue, Mrs. Tanz had no equity in defendant's company when it was sold.

However, a letter, dated July 14, 2001, from Defendant Kasakove to Mrs. Tanz, in which he offered her the investment, makes no mention of loan provisions, such as the term of the loan or the interest rate.  Rather Defendant's offering contains statements that clearly define the "project" as an investment, such as:

     a.  "I cannot guarantee the ***income on your investment***,"

     b.  "I have taken three ***partners*** with you being one…"

     c.  "…the **return on investment** (ROI) will be 24% before margin interest."

     d.  "***Payments to investors*** will be made monthly starting the third month…"

(Defendant's letter offering is annexed as Exhibit C to the Mortner Declaration.) (Emphasis supplied.)[2]

In 2003, plaintiff consulted an attorney, Peter Strauss, Esq., who raised concerns about

------

[2] Plaintiff relied upon the offering letter, dated July 14, 2001 in framing the Complaint herein.  See the Mortner Declaration at ¶¶5 and 6.  Therefore, in connection with the instant 12(b)(6) motion, plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc. v. Sum Holding L.P.*, *supra*, 949 F.2d at 47-48).

defendants' handling of plaintiff's financial affairs and advised plaintiff that she may have a legal claim against defendants.

On or about February 12, 2004, defendant Kasakove finally responded in a letter to Attorney Strauss' inquiries. In his letter defendant Kasakove insisted that plaintiff's investment was a loan. See Exhibit D to the Mortner Declaration.[3]

Defendants have wrongfully attempted to characterize Mrs. Tanz's investment as a loan, and on this basis, Defendant Kasakove has wrongfully denied plaintiff her share of the proceeds from the alleged sale of the company in which she invested.

### e.    Defendant Kasakove's Continuing Role as Fiduciary until December 2006.

Defendants allege, "Plaintiff's relationship with Defendants as her financial advisor ended in 2001." (See Defendants' Memorandum, p.6) Thus, Defendants argue that defendant Kasakove advised Mrs. Tanz to invest in his company "sometime after her financial advisory relationship with Kasakove ended in 2001." (*See* Defendants' Memorandum, p.13) This is patently untrue. Defendant's fiduciary relationship with plaintiff continued until the end of 2006.

The ongoing fiduciary relationship between defendant Kasakove and Mrs. Tanz is evidenced in a letter from defendant Kasakove to Mrs. Tanz, dated July 10, 2003, in which he states that due to his advancing years "I have planned for this time by substantially reducing my client list." The 2003 letter goes on to refer to Mrs. Tanz "as one of the selected clients to be

---

[3] Plaintiff relied upon Defendant Kasakove's letter of February 12, 2004 in framing the Complaint herein. See the Mortner Declaration at ¶¶7 and 8. Therefore, in connection with the instant 12(b)(6) motion, plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc. v. Sum Holding L.P.*, *supra*, 949 F.2d at 47-48).

maintained," and concludes by stating, "Thank you for choosing me as well as MARKAS

FINANCIAL SERVICES, INC. as your source for financial management."  A copy of Mr.

Kasakove's letter of July 10, 2003 is annexed to the Mortner Declaration as Exhibit E.[4]

     In fact, the fiduciary relationship between the parties continued until 2006, when

defendant Kasakove returned Mrs. Tanz's initial investment of $100,000 and told her to get a

new financial manager.  Defendant Kasakove's continuing advisorship is evidenced by Exhibit F

to the Mortner Declaration, which is a worksheet for a budget created by Mrs. Tanz in December

2006, containing handwritten comments by defendant Kasakove, such as "Take $5,000 from

IRA to pay bills," and "Cut down  - to 1 TV."[5]


     **f.**    **The Grounds For Equitable Estoppel**

     Following Plaintiff's $100,000 investment in defendant's company in 2001 and until

2006, defendant Kasakove repeatedly assured plaintiff that she should not worry about her

finances, because he would continue to provide her with adequate income from her investment in

his company.  Comp., ¶34.

     Nevertheless, Mrs. Tanz considered bringing an action against defendants as a result of

the loss of most of her nest egg.  As noted above, in 2003 she even consulted a lawyer, Peter

Strauss, Esq. on this matter.  However, Plaintiff never took any further steps toward filing an

---

[4] Plaintiff relied upon Defendant Kasakove's letter of July 10, 2003in framing the Complaint herein.  See the Mortner Declaration at ¶¶9 and 10.  Therefore, in connection with the instant 12(b)(6) motion, plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc. v. Sum Holding L.P.*, *supra,* 949 F.2d at 47-48).

[5] Plaintiff relied upon the December 2006 budget worksheet in framing the Complaint herein.  See the Mortner Declaration at ¶¶11 and 12.  Therefore, in connection with the instant 12(b)(6) motion, plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc. v. Sum Holding L.P.*, *supra,* 949 F.2d at 47-48).

action, because she was satisfied that Defendants were making up for their mishandling of her finances by providing her with adequate income from her investment in Defendants' own company.

In fact, Plaintiff was receiving extraordinary returns on her investment in Defendants' company, as defendants state, "The loan to the Markas Group was likely one of the better investments that Plaintiff ever made. From 2002 through 2006 Plaintiff earned annual returns on her investment of more than 20%, 15%, 13%, 13% and 18%, respectively." (*See* Defendants' Memorandum, p.17.)

However, in December 2006, defendant Kasakove advised plaintiff that he would no longer provide her with income from her investment in his company because he claimed to have sold the business. Comp., ¶35. Defendant Kasakove then returned Plaintiff's initial investment, without providing her any part of the proceeds from the sale of the business, and told her to get a new financial manager. Comp., ¶37.

Thus, in December 2006, plaintiff realized that defendant's conduct from 2001 to 2006 in paying high returns on her investment, and his assurances of ongoing income for her support were intended to lull her into failing to commence an action against defendants for the mismanagement of her finances from 1996 to 2001. Comp., ¶36.

Defendant Kasakove, as plaintiff's fiduciary, wrongly induced plaintiff to invest in his own company, and gave her extraordinary returns on her investment for five years in order to lull plaintiff into refraining from commencing legal action against defendant Kasakove for his breaches of his fiduciary duty. Comp., ¶43.

As a result, plaintiff and was lulled into a false sense of security by Defendant Kasakove. Comp., ¶41. Thus, defendant's ***conduct*** caused plaintiff to delay the bringing of this lawsuit.

Comp., ¶44.

Based on the foregoing, defendants should be estopped from taking advantage of defendant Kasakove's own wrongful conduct by the application of the doctrine of equitable estoppel.  Comp., ¶45.


### g.  Intentional Infliction of Emotional Distress

The Complaint alleges in Count II that plaintiff suffers from mental and physical disorders as a result of the severe mental pain and anguish caused by defendant Kasakove's conduct.  These injuries form the basis of plaintiff's claim for intentional infliction of emotional distress.

The medical records of plaintiff's psychiatrist, Dr. Andrew S Dalsimer, M.D. are annexed to the Mortner Declaration as Exhibit G.  The medical records of Dr. Dalsimer, evidence and form the basis of the allegations of damages that resulted from Defendant's intentional infliction of emotional distress.[6]

In 2003, plaintiff began to ask questions to defendant Kasakove regarding his management of her finances and began to ask for assurances that she would not lose the $100,000 she had invested in Defendant Kasakove's company.  Comp., ¶71.

In response to plaintiff's efforts to regain control of her financial life and to rest that control from defendant Kasakove, defendant Kasakove began a campaign of intimidation against plaintiff.  Comp., ¶72.

---

[6] Plaintiff relied upon Dr. Dalsimer's medical diagnosis and prescription of drugs to Mrs. Tanz in framing the Complaint herein.  See the Mortner Declaration at ¶¶13 and 14.  Therefore, in connection with the instant 12(b)(6) motion, Plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc., supra,* 949 F.2d at 47-48.

From 2003 to 2006 defendant Kasakove terrified Mrs. Tanz with demonstrations of fierce anger over her inquiries into the true state of her finances and her $100,000 investment.  Comp., ¶73.

As a result of defendant Kasakove's deliberate campaign of intimidation, defendant inflicted severe mental pain and anguish on Mrs. Tanz.  Comp., ¶74.

Because of the control defendant Kasakove maintained over plaintiff and the intimidation that defendant applied to plaintiff, plaintiff began to suffer from anxiety related disorders.  These disorders, including insomnia and depression, were magnified by Plaintiff's shocking loss of her financial security.  Comp., ¶75.

Plaintiff saw a doctor and the doctor prescribed medications for plaintiff and recommended further treatment.   Comp., ¶76.

As a result of the said conduct of defendant, plaintiff was made sick, nervous, depressed, unable to sleep, and unable to properly eat and digest her food; plaintiff was compelled to obtain medical aid in an endeavor to restore her health and incurred medical bills; and plaintiff still suffers from the same psychological and physical injuries.  Comp., ¶77.


## ARGUMENT

## I.    STANDARD OF REVIEW

### a.    The Standard of Review for Motions to Dismiss on the Pleadings

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, the courts accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007).  Under

this simplified standard for pleading, "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Tamoxifen Citrate Antitrust Litig.,* 429 F.3d 370, 384 (2d Cir.2005), *amended by* 466 F.3d 187, 200 (2d Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

### b. <u>Special Considerations for Questions Pertaining to Statutes of Limitations.</u>

In *Ortiz v. Cornetta,* 867 F.2d 146 (2d Cir.1989), the Second Circuit held, "While a statute-of-limitations defense may be raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), such motion should not be granted unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Ortiz,* (quoting *Abdul-Alim Amin v. Universal Life Ins. Co.,* 706 F.2d 638 (5th Cir.1983)). Indeed, courts generally resolve ambiguities in statutes of limitations in favor of sustaining the complaint or permitting the case to be resolved on its merits. 51 Am. Jur. 2d Limitation of Actions § 52. *See also Egelston v. State University College,* 535 F.2d 752, 754 (2d Cir.1976) (Rule 12(b)(6) dismissal is improper unless it "appears beyond doubt" that plaintiff's claim is barred by the statute of limitations).

In *F.D.I.C. v. Pelletreau & Pelletreau*, 965 F.Supp. 381 (E.D.N.Y. 1997), plaintiff brought an action for breach of fiduciary duty, and as in the instant case, the plaintiff asserted the doctrine of equitable estoppel against the defense of the statute of limitations. Defendant moved under Rule 12(b)(6), and, the court applied *Ortiz* in regard to the plaintiff's assertion of the doctrine of equitable estoppel, holding,

> Considering …[defendant] were allegedly negligent, reckless and
> breached their fiduciary duty with regard to monitoring and administering

> the lending activities on a continuing basis through August, 1992; as well as the possibility that certain tolling doctrines *may* be applicable, the Court declines at this time to dismiss the FDIC's causes of action relating to ventures entered into prior to August, 1986. … However, denial of the defendant Pelletreau's motion to dismiss based on the statute of limitations argument does not mean that issues relating to the limitations period are resolved. When the factual record in this case is fully developed via discovery, the defendants may have reason to reassert their arguments in a summary judgment motion. (*Id.*, at 388-389.)

Thus, the court in *F.D.I.C. v. Pelletreau & Pelletreau* noted that the invocation of the doctrine of equitable estoppel gives rise to issues of fact that cannot be determined in a motion at the pleading stage.

## II.    THE COMPLAINT AMPLY PLEADS THAT DEFENDANTS SHOULD BE EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE OF LIMITATIONS AS A DEFENSE

The doctrine of equitable estoppels has been developed by the courts into two distinct forms, (i) where defendant's fraudulent concealment of the existence of plaintiff's claim bars a statute of limitations defense (this form is sometimes referred to as equitable tolling); and (ii) where the plaintiff is about to institute suit and is lulled into security by defendant's conduct and promises of future acts, which the defendant does not intend to fulfill, but upon which the plaintiff relies, only to find that the statute has run.

The Court observed this dichotomy in *Abercrombie v. Andrew College*, 438 F.Supp.2d 243 (S.D.N.Y. 2006),

> Under New York law, equitable estoppel refers to a court's power to bar the application of the statute of limitations due to representations or conduct by a party which ***induces*** the opposing party to postpone bringing suit on a known cause of action, or which ***fraudulently conceals*** an action unknown to the opposing party.

*Id*, 438 F.Supp.2d 243 at 265. (Emphasis supplied.)  *See also Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 49 (2d Cir. 1985) ("Unlike

equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit.")

Here, Plaintiff is invoking the doctrine of equitable estoppel based on the latter form, *i.e.*, defendants' conduct lulled and induced plaintiff into letting the statute run on her claim of breach of fiduciary duty.

**a.  Defendants' Argument that the Complaint Lacks the Elements of Fraudulent Concealment is Irrelevant.**

Defendant's motion to dismiss attacks the Complaint's assertion of equitable estoppel for failing to allege each of the elements of ***fraudulent concealment***.  However, plaintiff does not allege that defendants fraudulently concealed from her the existence of her claim of breach of fiduciary duty.  Consequently, all of defendants' arguments on the issue of equitable estoppel are irrelevant and without merit.

Since plaintiff is not alleging fraudulent concealment of her claim by defendants, defendants' arguments that (i) the Complaint does not allege "any actionable misrepresentation," and (ii) that "plaintiffs allegations of misrepresentation do not meet the particularity standard of Fed R. Civ. P. 9(b)" are irrelevant.  Also, completely off the mark is defendants' argument that "plaintiff cannot allege justifiable reliance on Kasakove's alleged misrepresentations."  Similarly defendant's argument that "plaintiff has not alleged that she undertook any due diligence to discover defendant's alleged wrongful conduct prior to the expiration of the statute of limitations" has no merit absent a claim of fraudulent concealment.  (*See* Defendants' Memorandum, pp.14-20.)  All of these supposed defects in plaintiff's pleading are absent from

the Complaint because ***the Complaint does not claim there was a fraudulent concealment***.

    **b.**  <u>**The Complaint Properly Pleads that Defendant's Conduct Lulled Plaintiff into**</u>
<u>**Allowing the Statute to Run.**</u>

    For more than 100 years the courts have applied the doctrine of equitable estoppel in circumstances where the defendant has lulled the plaintiff into a false sense of security or induced plaintiff not to file suit.  In *Schroeder v. Young*, 161 U.S. 334, 16 S.Ct. 512 (1896) the Supreme Court allowed a debtor to redeem property sold to satisfy a judgment, after the statutory time for redemption had expired.  The Court held that the purchasers could not rely on the limitation because one of them had told the debtor "that he would not be pushed, that the statutory time to redeem would not be insisted upon; and (the debtor) believed and relied upon such assurance."  The Court pointed out that in "such circumstances the courts have held with great unanimity that the purchaser is estopped to insist upon the statutory period, ***notwithstanding the assurances were not in writing***, and were made without consideration, upon the ground that the debtor was lulled into a false security." *Schroeder v. Young*, *supra,* 161 U.S. at page 344, 16 S.Ct. at page 516. (Emphasis supplied.)

    More recently, in *Cerbone v. International Ladies' Garment Workers' Union*, *supra,* 768 F.2d 45, the Second Circuit affirmed a line of cases in which the employee alleged that he had delayed filing a discrimination charge because, subsequent to his discharge, demotion, or forced retirement, his employer had promised to reinstate him in his former position or in a comparable alternative position. The Court of Appeals opined,

        Under these circumstances, courts have held that it was improper to grant summary judgment to the employer on the ground that the action was timebarred.  *See Coke v. General Adjustment Bureau, Inc., supra,* 640 F.2d at 595-96; *Ott v. Midland-Ross Corp.,* 600 F.2d 24 (6th Cir.1979); *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 193 (3d Cir.1977), *cert.*

*denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). On the facts presented in those cases, a jury could find that the statute of limitations was suspended for the period in which the employee was attempting "amicably to resolve his employment situation" and the employer was at least "sending positive signals" as to the possibility of reinstatement. *Bonham v. Dresser Industries, Inc., supra,* 569 F.2d at 193 (footnote omitted).

*Cerbone, supra,* 768 F.2d at 50

Similarly, in *Renz v. Beeman*, 589 F.2d 735 (2d Cir. 1978), the Court explained, "A common illustration of this kind of equitable estoppel arises where the plaintiff is about to institute suit and is lulled into security by promises which the defendant does not intend to fulfill but upon which the plaintiff relies, only to find that the statute has run. (Citing *Robinson v. City of New York*, 24 A.D.2d 260, 263, 265 N.Y.S.2d 566 (1965).)

In *Robinson v. City of New York*, *supra*, the Court held, "The estoppel to plead the statute may arise without the existence of fraud or an intent to deceive. If the agreement, representations or conduct of the defendant were calculated to mislead the plaintiff, and the plaintiff in reliance thereon failed to sue in time, this is enough."

Here, Mrs. Tanz was misled by her fiduciary's conduct, *i.e.,* defendants' payment for five years straight of double digit returns on her investment of $100,000, and she was misled by her fiduciary's assurances, *i.e.*, defendant Kasakove's assurances that he would continue to provide her support through these payments into the future.  Plaintiff in reliance thereon refrained from brining suit and thus failed to commence her action within the time allotted by the statute of limitations.

As noted above, although plaintiff consulted an attorney in 2003 regarding defendants' handling of her financial affairs, and she considered commencing a lawsuit, Plaintiff never took any further steps toward filing an action, because she was satisfied that Defendants were making up for their mishandling of her finances by providing her with adequate income from her

investment in Defendants' own company.  As defendants state, "The loan to the Markas Group was likely one of the better investments that Plaintiff ever made. From 2002 through 2006 Plaintiff earned annual returns on her investment of more than 20%, 15%, 13%, 13% and 18%, respectively."  (*See* Defendants' Memorandum, p.17.)  Of course, this ended abruptly in December 2006, when Plaintiff was dumped by defendant Kasakove and left with little more than the refund of her $100,000 investment.

Estoppel invoked in this case will avoid injustice.

In conclusion, since the Complaint properly pleads allegations of equitable estoppel, plaintiff has created questions of fact which cannot be determined on a motion to dismiss.  *See Renz* 589 F.2d at 750 n. 15.

Based on the foregoing, this action should *not* be dismissed at the pleading stage based on the statute of limitations, because plaintiff's invocation of the doctrine of equitable estoppel has been sufficiently pled in the Complaint.

## III.    THE COMPLAINT PROPERLY PLEADS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Count II of the Complaint, against defendant Kasakove alone, alleges that, beginning in 2003 and continuing until 2006, defendant Kasakove executed a campaign of intimidation against plaintiff in response to her efforts to regain control of her financial life.  The Complaint alleges that defendant Kasakove terrified Mrs. Tanz with demonstrations of fierce anger over her inquiries into the true state of her finances and her $100,000 investment, and that as a result of defendant Kasakove's deliberate campaign of intimidation, defendant inflicted severe mental pain and anguish on Mrs. Tanz.  *See* Complaint, ¶¶ 72-74.

The Complaint alleges that the intimidation that defendant applied to plaintiff resulted in anxiety related disorder.  *See* Complaint, ¶75.

Defendant Kasakove contends, "Plaintiff has failed to allege any conduct on the part of Kasakove that is sufficiently "extreme and outrageous" to meet the stringent New York standard" for a claim of intentional infliction of emotional distress. (See Defendants' Memorandum, p.21.)

However, New York courts have held that an action may be grounded not only on a single incident of "extreme and outrageous" conduct but also on a prolonged campaign of harassment or intimidation.

In *Vasarhelyi v. New School for Social Research*, 230 A.D.2d 658, 646 N.Y.S.2d 795 (1st Dept. 1996), the First Department held,

> It has been noted that "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation, a remedy is available in the form of an action for the intentional infliction of emotional distress." (quoting *Nader v. General Motors Corp.*, 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647 (1970).)
>
> *Vasarhelyi, supra,* 646 N.Y.S.2d at 797.

See also *Shannon v. MTA Metro-North R.R.*, 269 A.D.2d 218, 219, 704 N.Y.S.2d 208, 209 (1st Dept. 2000) (pattern of harassment, intimidation, humiliation and abuse, causing unjustified demotions, suspensions, lost pay and psychological and emotional harm over a period of years, sufficient to support cause of action for intentional infliction of emotional distress); and *Gill Farms Inc. v. Darrow*, 256 A.D.2d 995, 682 N.Y.S.2d 306 (3rd Dept. 1998)( a campaign of harassing telephone calls may state a cause of action for intentional infliction of emotional distress.)

Here, the fact that defendant Kasakove served as plaintiff's fiduciary and controlled her last remaining financial resources, magnified his ongoing intimidation and fierce anger toward

Mrs. Tanz's efforts to regain her independence from Defendant Kasakove.

Furthermore, the medical records for Phylis Tanz from her treating psychiatrist Andrew S. Dalsimer, M.D. are annexed to the Mortner Declaration as Exhibit G. These medical records evidence the foregoing allegations of harm that resulted from Defendant's conduct. Albeit, cause of action for intentional infliction of emotional distress is actionable per se and need not allege special damages. *Henaghan v. Dicuia*, 98 A.D.2d 742, 469 N.Y.S.2d 446 (2d Dep't 1983). Nevertheless, these records are submitted as evidence of the extreme conduct of defendant Kasakove in causing Mrs. Tanz's emotional distress. The medical records demonstrate that at the end of 2003 Mrs. Tanz began receiving medical treatment for depression related to her anxiety over the mismanagement of her finances and was prescribed Zoloft and Wellbutin.

Based on the foregoing, plaintiff's claim of intentional infliction of emotional distress should not be dismissed.

## CONCLUSION

For all the reasons set forth above Plaintiff Phylis Tanz respectfully request that the Court deny Defendants' motion to dismiss, and requests such other and further relief as to this Court may seem just, proper and equitable.

Dated: June 16, 2008
New York, NY

Respectfully submitted,

_____/s/_____
Richard M. Mortner (RM-0019)
40 Broad Street, 5th Floor
New York, NY 10004
Tel. 212-480-2181

Attorney for Plaintiff Phylis Tanz