UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                       :

PHYLLIS TANZ,                            :

              Plaintiff,            :

                             :   **ECF CASE**

     -against-              :

                             :   Case No. 08 Civ. 1462 (LAK)

EUGENE KASAKOVE and        :
MARKAS FINANCIAL SERVICES, INC.,   :

             Defendants.      :

                             :

---------------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN FUTHER SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT


                         Robert J. Grand
                         **DREIER LLP**
                         499 Park Avenue
                         New York, NY 10022
                         (212) 328-6100

                         *Attorneys for Defendants*
                         *Eugene Kasakove and*
                         *Markas Financial Services, Inc.*

Defendants Eugene Kasakove ("Kasakove" or "Defendant") and Markas Financial Services, Inc. ("MFS,") (collectively, "Defendants"), respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss the Second Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion").[1]

## PRELIMINARY STATEMENT

In their moving papers, Defendants persuasively demonstrated that Plaintiff's claim for breach of fiduciary duty must be dismissed because it is time-barred, and equitable estoppel is not available to Plaintiff to otherwise toll the three year statute of limitations applicable to this cause of action. Kasakove also established that the claim for intentional infliction of emotional distress must be dismissed because Plaintiff's vague and conclusory allegations of various unspecified verbal threats fall well short of the "extreme and outrageous" conduct required in order to maintain such a claim under New York law.

In opposition to the Motion, Plaintiff blatantly misrepresents several material facts in an apparent effort to lend credibility to her otherwise deficient breach of fiduciary duty claim and avoid early dismissal of her Complaint.[2] More importantly, however, Plaintiff badly mischaracterizes the legal arguments proffered by Defendants in support of their position that the breach of fiduciary duty claim is untimely and its dismissal cannot be saved by invoking equitable estoppel. In doing so, plaintiff carelessly brushes aside <u>all</u> of Defendants' arguments and supporting authorities in one broad stroke, arguing that <u>none</u> of those arguments and cases

---

[1] References to the Complaint shall be indicated as "Comp. ¶_." References to Defendants' Memorandum of Law in Support of the Motion to Dismiss shall be indicated as "Def. Mem. at _," and references to the accompanying Kasakove Declaration shall be indicated as "Kasakove Decl. ¶ __."

[2] References to Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss shall be indicated as "Plaintiff's Mem. at _," and references to the accompanying Richard M. Mortner Declaration, shall be indicated as "Mortner Decl. ¶_."

are relevant here. As shown more fully below, Defendants' well-reasoned arguments are supported by controlling case law that is indisputably germane to the issues in this case. Plaintiff's summary rejection of Defendants' arguments and her total indifference to the numerous authorities cited in Defendants' moving papers is fatal to her efforts to stave off dismissal of her claim for breach of fiduciary duty.

Further, Plaintiff's half-hearted attempt to demonstrate that she has adequately stated a claim for intentional infliction of emotional distress against Kasakove is entirely unpersuasive. No amount of argument can cure Plaintiff's failure to allege in her pleading any conduct on the part of Kasakove that is sufficiently "extreme and outrageous" under the relevant law to sustain a claim for intentional infliction of emotional distress.

## PLAINTIFF'S EFFORT TO DISTORT THE FACTS

**Plaintiff Intentionally and Deceptively Tries to Blur
the Distinction Between The Markas Group and MFS**

Plaintiff's attempt to twist the facts in her favor appears on the very first page (and is repeated on pages 5 and 6) of her memorandum of law. There, Plaintiff states that Kasakove:

> boldly admits in the motion to dismiss that at the time he was Mrs. Tanz's financial manager, he advised Mrs. Tanz to invest $100,000 in his own company, as it now appears, ***the very same company through which, as her fiduciary, he managed her personal finances***.

Neither of the points made by Plaintiff is true. There has been no admission anywhere by Kasakove that he "advised" Plaintiff to invest the $100,000 in The Markas Group (the "Investment"). Should this case survive the instant motion to dismiss, the facts will show that Plaintiff, not Kasakove, first expressed interest in making the Investment in The Markas Group.

Furthermore, as was made clear in Defendants' moving papers, and as is now indisputably clear from the letters attached as exhibits to the Mortner Declaration, the Investment

2

was made in The Markas Group, not MFS.  The Markas Group is a factoring company engaged in the business of factoring the receivables of a trucking company.  *See* Kasakove Decl. ¶ 2.  The Markas Group is not now, and has never been, engaged in the business of providing investment advice or personal financial management services.  The company that provides such services is MFS, the defendant herein.  As the record reflects, Plaintiff has been well aware of the distinction between the two companies since she first discussed the Investment with Kasakove in 2001.[3]  Plaintiff's intentional and deceptive efforts to distort the record and mislead this Court into believing that Kasakove advised Plaintiff to invest in MFS, his financial management company, rather than The Markas Group, a factoring company, is a blatant and dishonest attempt to create the appearance of self-dealing or other impropriety on the part of Kasakove -- where none exists -- in the hope of lending credibility to her otherwise baseless and untimely breach of fiduciary duty claim.  It should not be tolerated.

---

[3] The following examples in the record indisputably show that the distinction between MFS and The Markas Group were well known to the plaintiff and her lawyers.  Thus,

- the July 14, 2001 letter from Kasakove to Plaintiff annexed to the Mortner Declaration as Exhibit C, which details the potential risks and benefits of the Investment, was written on "The Markas Group" letterhead, not MFS letterhead;
- the checks annexed as Exhibit 1 to the Kasakove Declaration reflecting Plaintiff's Investment are made payable to "The Markas Group," not MFS;
- the July 10, 2003 letter from Kasakove to Plaintiff annexed to the Kasakove Declaration as Exhibit 3, was written on The Markas Group letterhead and confirms that Plaintiff's Investment was made with The Markas Group;
- the July 12, 2004 letter from Kasakove to Plaintiff's attorney, annexed as Exhibit D to the Mortner Declaration, clearly states in the opening sentence that Plaintiff's Investment was with The Markas Group; and
- the documents reflecting the return of Plaintiff's $100,000 investment in full, annexed as Exhibit 4 to the Kasakove Declaration, confirm that the Investment was with The Markas Group.

**ARGUMENT**

**I.**

**PLAINTIFF'S CLAIM FOR BREACH
OF FIDUCIARY DUTY MUST BE DISMISSED**

**A.    Plaintiff's Breach of Fiduciary Duty
Claim is Barred by the Statute of Limitations**

Plaintiff does not dispute that the applicable statute of limitations period is three years.
*See Ciccone v. Hersh*, 530 F.Supp.2d 574, 579 (S.D.N.Y. 2008) (*citing The Independent Order
of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942 (2d Cir. 1998). Plaintiff also
does not dispute the fact that the three year limitations period accrues and begins to run upon the
date of the alleged breach. *See Ciccone*, 530 F.Supp.2d at 579; *see also Whitney Holdings, LTD
v. Givotovsky,* 988 F.Supp. 732, 744 (S.D.N.Y. 1997). Plaintiff also concedes that her breach of
fiduciary duty claim is based on Defendants' purported mismanagement of her finances from
1996 through 2001. Plaintiff's Mem. at 9; *see also* Comp. ¶ 36.[4]  Thus, even according to
Plaintiff's own view of the facts and the law, absent a determination that Plaintiff is entitled to
invoke the doctrine of equitable estoppel, Plaintiff concedes that her breach of fiduciary duty
claim would be time-barred, because the latest date on which the statute began to run would have
been sometime in 2001, about 7 years before Plaintiff filed her complaint.[5]

---

[4] Plaintiff attaches a July 2003 letter to her from Kasakove indicating that her fiduciary relationship with Defendants
continued beyond 2001. *See* Mortner Decl, Ex. C. This argument is a red herring. Plaintiff concedes that her
breach of fiduciary duty claim is based on Defendants' management of her finances from 1996 through 2001. *See*
Comp. ¶ 36; *see also* Plaintiff's Mem. at 9. Plaintiff does not allege that Kasakove provided any services as a
financial advisor to her after 2001 and does not allege that Defendants fraudulently concealed from her the existence
of her legal claims during this alleged continuous representation. Should this case survive the instant Motion, the
facts will show that the last payment plaintiff made to Defendants for financial management services rendered was
in 2001. In any event, the so-called "evidence" of Kasakove's continuous financial advice consists of nothing more
than his suggestion to her to reduce her cable bill by getting rid of an extra cable box in her home and to put five
thousand dollars towards her credit card debt -- hardly the professional advice of a financial advisor. *See* Mortner
Decl., Ex. F.

[5] Rather than contest these issues, Plaintiff argues that dismissal of the Complaint on statute of limitations grounds is
inappropriate at this time, because the question of whether the limitations period has expired or should be tolled is

**B.    Defendants' Arguments and Cited Authorities
        Demonstrating That Equitable Estoppel is not
        <u>Applicable in this Case are Relevant and Controlling</u>**

In their moving papers, Defendants presented overwhelming legal authority in support of

their argument that the doctrine of equitable estoppel is inapplicable here.  Remarkably, instead

of addressing Defendants' well-reasoned arguments, Plaintiff casually sweeps them aside with

the back of her hand, proclaiming that "all of defendants' arguments on the issue of equitable

estoppel are irrelevant and without merit."  Plaintiff's abrupt dismissal of Defendants' arguments

is premised on her mistaken belief that those arguments and cited authorities pertain to the

doctrine of equitable tolling, which is invoked where a defendant fraudulently conceals an action

unknown to the plaintiff until after the statute of limitations has expired.  Thus, Plaintiff argues

---

ambiguous.  Plaintiff's Mem. at 12, 13.  In support of this argument, Plaintiff first cites *Ortiz v. Cornetta*, 867 F.2d 146 (2d Cir. 1989).  In *Ortiz*, the plaintiff, a *pro se* prisoner, presented evidence that he had filed the complaint in a timely manner, but that the clerk sent the complaint back to the plaintiff for a "correction."  When the plaintiff filed the complaint the second time three days later, the statute of limitations period had already expired.  The court pointed out that a *pro se* litigant is typically held to "less stringent standards than those governing lawyers," and refrained from dismissing the complaint, because the plaintiff presented a reasonable argument supporting his claim that the complaint was first received within the limitations period.  *Id.* at 147-149.  Here, unlike in *Ortiz*, there is no doubt whatsoever that the Plaintiff failed to file the Complaint within the applicable limitations period.  Plaintiff concedes that fact, and argues only that equitable estoppel should preclude dismissal of her claim.  The doctrine of equitable estoppel was not at issue in *Ortiz*.  Further, unlike the *pro se* plaintiff in *Ortiz*, Plaintiff here acknowledges that she consulted with a lawyer "on this matter" as far back as 2003, more than four years before she commenced this lawsuit.  *Ortiz* is simply not applicable to this case.

Plaintiff's reliance on *Egelston v. State University College at Geneseo*, 535 F.2d 752 (2d Cir. 1976) is similarly misplaced.  As in *Ortiz*, the plaintiff in *Egelston* appeared *pro se*.  The plaintiff brought suit under Title VII, which provided for two different statutory periods for filing a complaint.  The plaintiff mistakenly thought her claim fell under the 300 day period of limitations, when it actually fell under the 180 day period of limitations.  The court denied the defendant's motion to dismiss the complaint on statute of limitations grounds, noting that Title VII is "rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer." *Egelston*, 535 F.2d at 754.  Accordingly, the court held that it was unfair to hold a *pro se* plaintiff to the confusing limitations periods of Title VII.  Here, unlike in *Egelston*, there are no complex federal statutes involved and, as noted above, the Plaintiff here has never appeared *pro se*.  There is thus no basis to apply the flexible standard adopted by the court in *Egelston* to this dispute.

In *F.D.I.C. v. Pelletreau & Pelletreau*, 965 F.Supp. 381 (E.D.N.Y. 1997), the defendant moved to dismiss time-barred claims.  There, however, the court denied the motion, because the plaintiff provided ample factual basis to demonstrate that both the doctrine of continuous representation and the doctrine of equitable estoppel applied to toll the statute of limitations.  Here, as demonstrated in Defendants' moving papers and as shown more fully below, Plaintiff has failed to adequately allege that any tolling doctrines are applicable in this case.

that, because she is not alleging fraudulent concealment, Defendants' arguments are not relevant.

Plaintiff's argument is way off base.[6]

In fact, while some of the authorities cited by Defendants may also discuss equitable

tolling based on a party's fraudulent concealment of the existence of a cause of action from

another party, all of the authorities cited by Defendants indisputably relate to the doctrine of

equitable estoppel, i.e., the court's power to bar the applicable statute of limitations due to

representations or conduct by a defendant which lulled a plaintiff into believing it was not

necessary to commence litigation, the very same principal sought to be invoked by the Plaintiff

here. *See Netzer v. Continuity Graphic Assoc., Inc.* 963 F.Supp. 1308, 1316 (S.D.N.Y. 1997);

*see also Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir. 1995); *Cerbone v. Int'l*

*Ladies' Garment Workers' Union,* 768 F.2d 45, 49-50 (2d Cir. 1985); *see also Friedman v.*

*Wheat First Securities, Inc.,* 64 F.Supp.2d 338 (S.D.N.Y. 1999); *Beckles v. George*, No. 07 CV

0584, 2008 WL 926578, at *4 (E.D.N.Y. Mar. 31, 2008) (*citing Matter of Gross v. New York*

*City Health & Hosps. Corp.*, 122 A.D.2d 793, 505 N.Y.S.2d 678 (2nd Dept. 1986). These cases

are directly on point, and Plaintiff's summary rejection of Defendants' arguments and these

numerous controlling authorities is fatal to her efforts to stave of dismissal here.

Thus, the law in this circuit is clear that "to invoke equitable estoppel, a plaintiff must

show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe

that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation

---

[6] While Defendants agree that Plaintiff's equitable estoppel argument is not based on allegations that Defendants fraudulently concealed an action unknown to the Plaintiff until after the limitations period expired, it does appear from Plaintiff's allegations that the issue of fraudulent concealment is part of her claim. That is, if Plaintiff's allegations are to be taken as true, her argument essentially is that even though she was aware of a potential claim (and retained a lawyer), she refrained from commencing litigation based on Kasakove's representation that he would provide her with "ongoing income on which to live," but that she did not learn until after the limitations period expired that this representation was false. In other words, Kasakove concealed the falsity of his representations from Plaintiff until after the limitations period expired. Accordingly, Defendants are not at all persuaded that the issue of fraudulent concealment is so absent from Plaintiff's equitable estoppel argument that she can unhesitatingly dispense with the case law on that issue.

to his detriment." *Buttry v. General Signal Corp.,* 68 F.3d at 1493 (emphasis added). The cases supporting Defendants' argument that Plaintiff failed to allege an actionable misrepresentation or reasonable reliance all discuss equitable estoppel. *See* Defendants. Mem. at 14-15, 18-20.[7]

Similarly, Plaintiff's argument that the obligation to show reasonable diligence in ascertaining the facts of a potential claim prior to the expiration of the limitations period is relevant only in equitable tolling cases, rather than equitable estoppel cases is wrong. *See Netzer,* 963 F.Supp. at 1316 ("a plaintiff seeking to invoke either doctrine is also required to demonstrate that his ignorance is not attributable to a lack of diligence on his part."); *see also Abercrombie v. Andrew College,* 438 F.Supp.2d 243, 266 (S.D.N.Y. 2006); *Beckles v. George,* 2008 WL 926578, at *4. Because Plaintiff acknowledges that even after she was put on notice of her potential claim (as early as 2003 when she retained a lawyer), she undertook no due diligence to ascertain the facts relevant to her cause of action prior to the expiration of the limitations period, she is not entitled to apply the doctrine of equitable estoppel to prevent dismissal of her breach of fiduciary duty claim on statute of limitations grounds. *See* Def. Mem. at 18-20.

### C.    The Documentary Evidence Confirms That Plaintiff Cannot Allege Reasonable Reliance on Kasakove's Alleged Wrongful Conduct

Plaintiff's principal allegation in support of her equitable estoppel argument is that she was "lulled" into inaction by Kasakove's repeated assurances that her $100,000 investment in Kasakove's "trucking company" would provide her with "ongoing income" on which to live. Plaintiff argues too that she was entitled to receive proceeds from the sale of that company. *See* Comp. ¶¶ 33-37. These allegations, however, are belied by the documentary evidence which confirms that Kasakove made no such promises upon which Plaintiff could reasonably rely, and

---

[7] As with all cases based on fraud filed in federal court, Plaintiff's equitable estoppel argument, which is premised on Defendant's alleged fraudulent representation (not fraudulent concealment) to provide her with "ongoing income on which to live," is subject to the heightened particularity standards under Rule 9(b). *See* Def. Mem. at 15-16.

Plaintiff was well aware that her Investment with The Markas Group was not an equity investment.

Indeed, Plaintiff's allegations are squarely contradicted by the documentary evidence she attaches to her opposition papers. Exhibit C to the Mortner Declaration is a July 14, 2001 letter from Kasakove to Plaintiff which describes the Investment in The Markas Group. In that letter, Kasakove clearly stated that "I cannot guarantee the income on your investment..." Thus, Plaintiff was aware as early as July 2001 that Kasakove made no such promise to provide her with income from the Investment. In the July 14, 2003 letter attached as Exhibit 3 to the Kasakove Declaration, Kasakove again unequivocally reminded Plaintiff that her income from the Investment was not guaranteed. *See* Kasakove Decl., Ex. 3; Def. Mem. at 16-18.

Further, attached to the Mortner Declaration as Exhibit D is a letter dated July 12, 2004 from Kasakove to Plaintiff's lawyer, Peter Strauss. In that letter Kasakove makes clear that the Investment is with The Markas Group, and twice states that the Investment was not an equity investment. The letter also states that Plaintiff's principal investment was guaranteed.

In view of these documents, it is simply not credible for Plaintiff to contend that she was lulled into inaction by Defendants assurances that the $100,000 investment – which provided her with double digit returns for 5 years -- would provide her "ongoing income on which to live," or that she would receive any profit from the sale of the company in which she believed she invested.[8]

---

[8] Plaintiff contends that Kasakove referred to the investment as a "loan" in the moving papers and, in doing so, "wrongfully denies plaintiff her share of the proceeds from the sale of the company in which she invested." *See* Plaintiff's Mem. at 2, 6-7. Again, Plaintiff is misguided. Kasakove does not dispute -- and repeatedly acknowledges in his moving papers -- that Plaintiff's transfer of $100,000 to The Markas Group was an investment. The issue is not whether the Investment is labeled an "investment" or a "loan." After all, a loan is a type of investment. Regardless of the label attached to the Investment, the relevant inquiry in this case is whether plaintiff, as she alleges, was promised "ongoing income on which to live" and whether she received any equity in exchange for her $100,000 "investment" such that she should have been entitled to share in the proceeds of the sale of the "trucking company." *See* Comp. ¶¶ 33-37. As shown above, the documentary evidence confirms that Kasakove

In sum, Plaintiff's claim for breach of fiduciary duty is not only barred by the statute of the limitations, but her allegations are also insufficient to support a claim that Defendants should be equitably estopped from asserting a statute of limitations defense.[9]

## II.

### THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

As demonstrated in Defendants' moving papers, Plaintiff has completely failed to plead the type of extreme and outrageous behavior required in order to maintain a claim for intentional infliction of emotional distress. *See* Defendants' Mem. pp. 20-22. Without identifying a single concrete example of Kasakove's wrongful conduct, Plaintiff vaguely alleges that Kasakove engaged in "a deliberate campaign of intimidation," and that he allegedly displayed "demonstrations of fierce anger," toward plaintiff. Comp. ¶¶ 72-73. Even if taken as true, these allegations simply do not rise to the level of extreme and outrageous conduct, "beyond all possible bounds of decency," necessary to sustain a claim for intentional infliction of emotional distress under New York law. *See Campoverde v. Sony Pictures Entertainment*, No. 01 Civ.

---

promised neither to provide plaintiff with "ongoing income on which to live" from the Investment, nor a share in the proceeds of the sale of the "trucking company" in which plaintiff claims to have invested. The characterization of the investment as a loan was (and is) meant only to clarify the nature of the investment and to highlight that plaintiff received no equity in The Markas Group or any other company allegedly controlled by Kasakove. Accordingly, whether the Investment is labeled an "investment" or a "loan" is beside the point.

[9] The cases cited by Plaintiff do not support her argument that Defendants lulled her into allowing the statute to run. Plaintiff cites *Schroeder v. Young*, 161 U.S. 334, 16 S.Ct. 512 (1896), a case decided 112 years ago, and *Robinson v. City of New York*, 24 A.D.2d 260, 265 N.Y.S.2d 566 (1ˢᵗ Dep't 1965). In both of these cases, the plaintiff was told by the defendants that they would not seek to enforce the statutory limitations period. In both cases the court held that equitable estoppel was appropriate to prevent the inequitable use by the defendant of the statute as a defense. Here, Plaintiff does not allege that Defendants assured Plaintiff that they would not seek to enforce the statute of limitations. In addition, Plaintiff cites to *Renz v. Beeman*, 589 F.2d 735 (2d Cir. 1978). In *Renz*, the court set forth several instances when equitable estoppel is appropriately applied -- for example, where the defendant misrepresents to the plaintiff that time within which he may start suit, where the defendant agrees to stay the suit, or where the defendant makes affirmative fraudulent statements to conceal the facts to the plaintiff which are essential to make out the cause of action. As set forth above and in Defendants' moving papers, none of these circumstances is present here.

7775, 2002 WL 31163804, at *11 (S.D.N.Y. Sept. 30, 2002)(dismissing a claim for intentional infliction of emotional distress even where the complaint alleged that the defendants were "abusive" and "threatening."). That Plaintiff now attaches notes from her doctor as evidence of her symptoms of anxiety and depression has no bearing on the deficiencies in her pleading.[10]

## **CONCLUSION**

For the foregoing reasons, Defendants' respectfully request that this Court grant their motion to dismiss the Second Amended Complaint in its entirety.

Dated: New York, New York
      June 26, 2008

                                  DREIER LLP

                                  By:  /s/ Robert J. Grand
                                        Robert J. Grand
                                        499 Park Avenue
                                        New York, New York 10022
                                        Tel.:  (212) 328-6100
                                        Fax:  (212) 328-6101

                                  *Attorneys for Defendants*
                                  *Eugene Kasakove and Markas Finacial*
                                  *Services, Inc.*

---

[10] The cases cited by Plaintiff do not support her argument that her allegations are sufficient to survive dismissal. In *Vasarhelyi v. New School For Social Research*, 230 A.D.2d 658, 646 N.Y.S.2d 795 (1st Dep't 1996), the plaintiff alleged that her criticism of her employer resulted in her employer hiring criminal attorneys to interrogate her for 10 hours ostensibly to determine whether she had circulated a memorandum to the schools board of trustees. The interrogators were hostile, abusive and threatening, and humiliated her for her poor English, and probed into her relationships with co-workers, trustees and her husbands. After further inquiry, she was fired. The allegations by the plaintiff in *Vasaryelyi* go far beyond anything that Plaintiff has alleged in this case. Plaintiff's vague and conclusory allegations of Kasakove's "campaign of intimidation" are insufficient to withstand a motion to dismiss.

In *Shannon v. MTA Metro-North Railroad*, 269 A.D.2d 218, 704 N.Y.S.2d 208 (1st Dep't 2000) the plaintiff presented "detailed allegations that defendants intentionally and maliciously engaged in a pattern of harassment, intimidation, humiliation and abuse, causing him unjustified demotions, suspensions, lost pay and psychological and emotional harm over a period of years." *See Shannon*, 70 N.Y.S.2d 208, 209. Here, Plaintiff has failed present even a single concrete example of anything that Kasakove said or did as part of his alleged "campaign of intimidation." As such, Plaintiff's claim for intentional infliction of emotional distress must be dismissed.